[Civ. No. 3619.  First Appellate District, Division One.—January 18, 1921.]

THE FIRST NATIONAL BANK OF ANTIOCH (a Corporation), Appellant, v. PHILLIP FICKERT, Respondent.

[Civ. No. 3620.  First Appellate District, Division One.—January 18, 1921.]

COMMONWEALTH NATIONAL BANK OF KANSAS CITY, MISSOURI (a Corporation), Appellant, v. PHILLIP FICKERT, Respondent.

[1] PROMISSORY NOTES—BONA FIDE ASSIGNMENT BEFORE MATURITY—FAILURE OF CONSIDERATION—ESTOPPEL.—Where negotiable promissory notes are assigned before maturity, for a valuable consideration, and without notice of any pretended existing equities against them, the maker is estopped to set up as a defense the nonperformance by the payee of a certain contract which constituted part consideration for the notes.

[2] ID.—PAROL MODIFICATION OF WRITTEN AGREEMENT—EVIDENCE.—In an action to recover upon certain promissory notes executed in payment of certain jennets, pursuant to the terms of a written agree-

---

2. Parol evidence to add to or vary writing, note, 56 Am. St. Rep. 659.

ment, parol evidence is not admissible to prove that, after the making of such written agreement, the parties entered into another and different agreement.

APPEAL from a judgment of the Superior Court of Kern County. H. A. Peairs, Judge. Reversed.

Edward F. Brittan and Devlin & Devlin for Appellants.

Anderson & Borton and F. E. Borton for Respondent.

SEAWELL, P. J., *pro tem.*—These are appeals from judgments made and entered in favor of defendant in two separate actions brought by plaintiffs herein to recover upon two certain promissory notes.

Agreeably to stipulation of the parties an order of this court was heretofore made that both appeals be submitted upon the same briefs. The notes in each action are alike in amounts, identical in form and substance, except as to the time of payments and arise out of the same transaction and contract. Both were indorsed and sold to the respective assignees, plaintiffs herein, before maturity and for a valuable consideration, in due course of business. Plaintiffs' assignor entered into the following agreement of sale with defendant:

"Tehachapi, Cal., June 1st, 1914.

"This agreement made and entered into this day by and between H. B. Thornberry of Los Angeles, Calif., hereinafter mentioned as party of the first part, and Philip Fickert of Tehachapi, Calif., hereinafter mentioned as party of the second part, witness as follows: The party of the first part agrees to sell and does sell to the party of the second part twenty head of jennets for the consideration of thirteen thousand dollars, all of said jennets to be registered stock and to be imported from Missouri, and the party of the second part agrees to accept such jennets as may be selected by the party of the first part as satisfactory stock, and pay for same as follows: giving on this date one note for thirty two hundred fifty dollars due seven months after date, said note to be given as deposit on said stock, said payment to be forfeited for failure to accept such stock as delivered, or to furnish the following payments as herein-

after mentioned.. 2nd note for thirty-two hundred fifty dollars at seven per cent, due one year. 3rd note for thirty two hundred fifty dollars at seven per cent due in two years. 4th note for thirty two hundred fifty dollars at seven per cent due in three years. From delivery of said stock at Tehachapi, Cal. It being also agreed and understood that all of the said jennets shall be in foal or said party of the first part shall forfeit one hundred dollars for each jennet which shall prove to fail to be in foal. Said delivery to be made on or before November first nineteen hundred fourteen.

"(Signed)   H. B. Thornberry,
"Party of the first part.
"Accepted by Phillip Fickert,
"Party of the second part."

The above is the only written instrument evidencing the agreement of sale and purchase of the animals therein described.

The four notes provided for in said agreement were accordingly made, executed, and delivered by Phillip Fickert to H. B. Thornberry, plaintiffs' assignor. The first and second notes were paid some time after they fell due. Payment of the third and fourth having been refused, these actions were brought September 28, 1917, to enforce said payments. Said notes being for like amounts were in the following form:

"$3250.00                    Bakersfield, Cal., Oct. 14, 1914.

"Thirty-two months after date, I promise to pay to the order of H. B. Thornberry, Thirty-two Hundred fifty and no/100 dollars. For value received with interest at the rate of 7 per cent per annum from date and if the interest be not paid annually, to become as principal, and bear the same rate of interest. This note is negotiable and payable without defalcation or discount and without any relief or benefit whatever from stay, valuation, appraisement, or homestead exemption laws.

"Phillip Fickert."

The complaints are in the usual form of actions to recover on promissory notes.

By way of answer and as a separate and special defense, defendant alleged that on the fourteenth day of October, 1914, a certain transaction and agreement was made be-

tween defendant and H. B. Thornberry, plaintiffs' assignor, by the terms of which said Thornberry sold defendant twenty head of jennets for the price of $13,000, of which sum the promissory notes set out in plaintiffs' complaint, respectively, evidenced only a portion of the consideration therefor. That it was the agreement of said parties thereto that any male colts born to any of said jennets, would, upon demand of defendant, be purchased by Thornberry from defendant at the time when such male colts were ready to be weaned, for the sum of $1,000 each and that at any time during the pendency of said contract and before the final payment of any of the promissory notes given as the purchase price of said jennets, said Thornberry would upon demand of defendant, receive back the said jennets or such of them as then survived, and all the progeny thereof, and would in addition thereto cancel and release him from all obligations then subsisting on account of said purchase of said jennets and repay all sums of money paid by defendant to said Thornberry. It was further alleged that there had been born to said jennets while in defendant's possession eight male colts, all of which had been weaned, and that a demand had been made upon said Thornberry to purchase the same at the agreed price of $1,000 each, but he had at all times refused to purchase the same. That on November 30, 1915, defendant notified said Thornberry of his election to rescind in accordance with said agreement by offering to return the survivors of said jennets, numbering eighteen, and the progeny thereof, numbering, on November 30, 1915, eight (four jack colts and four jennet colts), upon condition that said Thornberry return to defendant the promissory notes then outstanding against him, including the notes set forth in plaintiffs' complaints, together with the amounts which he had theretofore paid, but that said Thornberry refused to accept said offer.

Defendant further alleges that the consideration for said promissory notes had wholly failed in that said Thornberry had repudiated it and refused to perform the foregoing contract which constituted a material-portion of the consideration for said promissory notes.

The answer concludes with an allegation that defendant had at all times been willing to deliver over and sell said eight male colts to said Thornberry for the sum of $1,000

each, and closes with an offer to sell said colts to said Thornberry at said price of $1,000 each.

The foregoing constitutes all the material matters set out in defendant's answers.

The court found that the said promissory notes were made, executed, and delivered as alleged in the complaints respectively. That before said notes became due and payable, and for a valuable consideration, said Thornberry assigned and sold said notes and the indebtedness evidenced thereby to said respective party plaintiffs and that said plaintiffs are the legal owners and holders thereof. That no part of the principal or interest has been paid on said third note except the sum of $227.50, paid October 14, 1915, being the installment of interest due on that day, and $545 paid on the same day on account of principal. The court then proceeded to find that every material allegation of the answer was true, but that it was not true that there was due to the First National Bank of Antioch, on January 18, 1919, the sum of $3,089.55 on account of principal and unpaid interest, or any sum whatsoever. A similar finding was made against the fourth assigned promissory note, owned by plaintiff Commonwealth National Bank of Kansas City, Missouri, as to any amount being due or owing from the defendant, although a large amount remained unpaid on account of the note it held against said defendant.

It is further expressly found that plaintiffs had no knowledge of any representations made by said Thornberry to said defendant at the time, to wit, October 14, 1914, said contract and agreement, which was in parol, was made, as to the progeny of said jennets or as to any representations or statements made by said Thornberry as to the subject matter of said contract or agreement.

As a conclusion of law from its finding of fact the court determined that the promissory notes set out in said complaints are not negotiable in form and were purchased and received by plaintiffs subject to all equities and defenses existing in favor of and against plaintiffs' assignor, Thornberry, and defendant was declared, therefore, to be entitled to judgment for his costs.

We are of the opinion that the trial court's conclusion is erroneous.

Every material fact essential to entitle plaintiffs to judgment is either found by the court or admitted to be true, except that the notes in question were in form non-negotiable, and that the evidence received to establish the parol agreement over the objection of plaintiffs was properly admitted and was sufficient to defeat the actions.

It would serve no practical purpose to follow counsel through learned disquisitions as to what *impedimenta* commercial paper may carry and still retain its negotiable character. **[1]** The instant case appears to fall wholly within the rule of *stare decisis*. The identical language, even as to the arrangement of words and sentences, relied upon by defendant to outlaw said notes from the negotiable instrument class, was passed upon in *Flood* v. *Petry*, 165 Cal. 309, [46 L. R. A. (N. S.) 861, 132 Pac. 256]. The instant cases, upon the facts, places plaintiffs in a more favorable position than was plaintiff in *Flood* v. *Petry, supra*. There plaintiff had knowledge of an existent contract between Flood and defendant Petry's assignor. Here it is found that plaintiffs had no knowledge of any contract or condition of any kind that did or could affect the notes upon which the present actions were brought. Defendant here, as in the case last above cited, must be held to be estopped from setting up the defense of non-negotiability of said notes, which were assigned before maturity and for a valuable consideration and without notice of any pretended existing equities against them. "Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer." (Civ. Code, sec. 3543; *Flood* v. *Petry, supra; Spotton* v. *Dyer*, 42 Cal. App. 585, [184 Pac. 23].)

**[2]** We further think that the evidence tending to establish the parol agreement was improperly admitted. The written agreement of contract, dated June 1, 1914, seems to be full and complete and is presumed to contain all of the engagements of the parties thereto. (Sec. 1856, Code Civ. Proc.; sec. 1625, Civ. Code; *Langan* v. *Langan*, 89 Cal. 194, [26 Pac. 764].)

There is nothing ambiguous or uncertain about the terms of the contract nor does it appear to be oppressive or inequitable. It is not attacked upon the ground of fraud,

mistake, or accident. (Sec. 1640, Civ. Code.) No attempt was made to reform it.

It is the claim of defendant that the evidence received to establish the parol contract was admissible to show the true nature of the consideration and not to vary the terms of the contract. The alleged subsequent parol contract does, however, substantially change the terms of the written contract and reduces it from an absolute to a conditional or contingent sale. It makes for the parties another and different agreement. This may not be done. (*Lompoc Valley Bank* v. *Stephenson,* 156 Cal. 350, [104 Pac. 449]; *Carver* v. *San Joaquin Cigar Co.,* 16 Cal. App. 761, [118 Pac. 92]; *Hardin* v. *Robinson,* 175 Cal. 534, [166 Pac. 808]; *Germain Fruit Co.* v. *Armsby,* 153 Cal. 585, [96 Pac. 319]; *Langan* v. *Langan,* 89 Cal. 194, [26 Pac. 764]; *Bledsoe* v. *Stuckey,* 47 Cal. App. 95, [190 Pac. 217]; *Peterson* v. *Chaix,* 5 Cal. App. 525, [90 Pac. 948].)

Defendant and his wife gave testimony in support of the alleged parol agreement while Thornberry denied that any such agreement had been made. Letters written by defendant's wife, at his dictation, in answer to repeated demands made by Thornberry for payment of the notes in accordance with the written contract tend strongly to support the claim that the contract of sale was absolute and not conditional. One of the excerpts from a letter written at defendant's direction to Thornberry, and others to the same effect are in the record, is as follows: ''I don't want you to think I am trying to get out of the deal. I know the money is due you, and should be paid, and will be, as soon as I can make the required arrangements.''

If the oral agreement had been made as contended for, defendant voluntarily placed himself in an embarrassing situation by not reminding Thornberry of that fact at the times when he was being harassed by demands to pay in accordance with the written agreement. From the view we take of the law of the two cases presented there seems to be no avenue by which defendant may escape from plaintiffs' demands. A retrial would be unavailing to defendant. The judgments appealed from are, therefore, reversed, with directions to the court below to enter judgments in favor of

plaintiffs as their respective interests are shown by the record.

Richards, J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 17, 1921.

All the Justices concurred.