WILLIAM W. PYE v. G. G. GRUNERT.[1]

No. 31,320.

November 5, 1937.

[1]Reported in 275 N. W. 615, 276 N. W. 221.

192

*Burton R. Sawyer,* for appellant.
*William W. Pye, pro se.*

LORING, JUSTICE.

This case involves a verdict for $53.98 recovered by the plaintiff on a complaint for money had and received, involving an alleged agreement by the defendant to pay the plaintiff the difference between the market value and the par value of certain bonds of the Home Owners Loan Corporation, from which corporation the defendant was obtaining a loan on his residence property. The case has been tried three times below, once in the justice court and twice in the district court.

It appears that the plaintiff is, and at the times here under consideration was, president of the State Bank of Morristown and the State Bank of Stanton. The defendant's home in Northfield was subject to a mortgage in the principal sum of $3,000 in favor of the State Bank of Morristown, which mortgage was subsequently transferred to the State Bank of Stanton. In 1933 the plaintiff suggested that the defendant procure a government loan and pay up this mortgage. Application was then made by defendant to the Home Owners Loan Corporation, and on January 8, 1934, the plaintiff, as president of the Stanton bank, executed a consent to accept in full settlement the bonds of the loan corporation at their face value for the $3,000 and accrued interest. October 27, 1934, the loan was ready for closing at the local office of the loan corporation at Faribault. The bonds of the loan corporation were not selling in the market at par, and the plaintiff claims that the defendant agreed to pay him personally the difference between the par value and the market value of the bonds, and plaintiff claims that he advanced this difference, which amounted to $135.58, to the Stanton bank. Upon this state of facts this suit was brought, the plaintiff admitting an offset of $81.60 which he owed defendant on a hardware bill. The defendant denied the contract and set up the hardware bill as a counterclaim. The trial court submitted the case to the jury, which brought in a verdict as hereinbefore stated. De-

fendant moved for judgment notwithstanding the verdict or a new trial and appealed from the order denying that motion.

12 USCA, § 1467(e), which is a part of the home owners loan act of 1933, provides:

"No person * * * shall * * * contract for * * * from any person applying to the corporation for a loan * * * any moneys * * * representing payment of any difference which may exist between the market value and the par value of the bonds of the Home Owners' Loan Corporation."

A heavy penalty is fixed by the statute for the violation of this prohibition,

"A contract that on its face requires an illegal act, either of the contractor or a third person, no more imposes a liability to damages for non-performance than it creates an equity to compel the contractor to perform. * * * And more broadly it long has been recognized that contracts that obviously and directly tend in a marked degree to bring about results that the law seeks to prevent cannot be made the ground of a successful suit." Sage v. Hampe, 235 U. S. 99, 105, 35 S. Ct. 94, 95, 59 L. ed. 147.

The policy announced by the home owners loan act is a policy of the United States by which we are bound, and there can be no question but that the United States can make its prohibition binding upon others than the technical parties to the loan contract in order to protect the borrowers. Sage v. Hampe, *supra.*

The Home Owners Loan Corporation was created as a relief agency to save the investments of small home owners in distress by judiciously refinancing their obligations on such homes, and in connection with the significant purpose of the act it justifiably prohibited contracts of the nature here involved. Other evasions of the purposes of the act have been held unenforceable. Jessewich v. Abbene, 154 Misc. 768, 277 N. Y. S. 599, 601; First Citizens Bank & Trust Co. v. Speaker, 159 Misc. 427, 287 N. Y. S. 831, 833.

"In all cases where contracts are claimed to be void as against public policy, it matters not that any particular contract is free

from any taint of actual fraud, oppression or corruption. The laws look to the general tendency of such contracts. The vice is in the very nature of the contract, and it is condemned as belonging to a class which the law will not tolerate." Richardson v. Crandall, 48 N. Y. 348, 362.

The act does not impair the obligation of any contract (U. S. Const. art. I, § 10) nor offend against the Fifth Amendment to the federal constitution. It prohibits a contract in advance of its making. The bank was not obliged to consent to receive the bonds at par. For a valid consideration it agreed to do so, and the new contract between the plaintiff and the borrower was made in direct violation of the statute, hence was a prohibited contract and illegal. Therefore the plaintiff cannot recover thereon. The defendant should recover judgment against plaintiff for the $81.60 of his admitted counterclaim with interest thereon. The case is remanded to the district court with directions to enter judgment in favor of the defendant in accordance with the views herein expressed.

Reversed.

MR. CHIEF JUSTICE GALLAGHER took no part in the consideration or decision of this case.

UPON APPLICATION FOR REARGUMENT.

On November 24, 1937, the following opinion was filed:

PER CURIAM.

Plaintiff takes the position that because when the loan was closed the 90-day period had expired within which the Stanton bank had agreed to take, in full satisfaction of its mortgage, $3,000 in bonds of the Home Owners Loan Corporation, he was at liberty to make a contract that defendant should pay the bank, by reimbursing plaintiff, for the difference between the market and par value of the bonds. Notwithstanding the expiration of this 90-day period, when the parties were notified that the loan was ready to be closed, plaintiff and defendant went to the loan corporation's office in Faribault to close it. They did close it, and the bonds were subsequently received. It appears that the assignment of the existing mortgage

from the Morristown bank to the Stanton bank had not been recorded, so when the loan was closed the Home Owners Loan Corporation accepted a satisfaction from the Morristown bank. At that time the plaintiff made an affidavit as president of the Morristown bank that no agreement had been made with defendant or anyone in his behalf to pay any discount on the bonds. The affidavit specifically stated that it was made as of the date of closing of the loan. It would seem obvious under these circumstances that the termination of the 90-day provision was waived. But whether it was or not, and whether at the time the loan was closed there was in force any agreement by the mortgagee or its assignee to accept the bonds at par seems to us wholly immaterial. The act of congress forbids the making of any contract such as plaintiff made, and no recovery may be had thereon. Plaintiff could not legally make such agreement. Defendant could not make it for or with him or for or with the bank.

Petition denied.

