## HEATH v. HUFFMAN.—127 S. W. (2d) 282.

Middle Section. December 10 1938.

Petition for Certiorari denied by Supreme Court, April 1, 1939.

J. H. Warden, of Shelbyville, for plaintiff in error Heath.
Ben Kingree, Jr., of Shelbyville, for defendant in error trustee.

CROWNOVER, J. This is an action in replevin, instituted by J. E. Huffman as trustee under a chattel mortgage, against A. G. Heath, for the possession of two Percheron mares.

The suit was instituted in a justice of the peace court where judgment was rendered that the plaintiff retain possession of the mares.

On the defendant's appeal to the Circuit Court the case was tried to a jury. The defendant pleaded the general issue of not guilty. At the conclusion of the evidence the plaintiff moved the court for peremptory instructions in his favor, which motion was sustained, and the jury was directed to return a verdict in favor of the plaintiff, which was done, and judgment was entered accordingly.

The defendant's motion for a new trial was overruled, and he appealed in error to this court and has assigned several errors, but

there was only one question raised in his motion for a new trial, and that is, the court erred in directing a verdict for the plaintiff.

A. G. Heath borrowed $348.15 from the First National Bank of Shelbyville, Tennessee, of which J. E. Huffman is president, and executed his note therefor, dated July 26, 1933, due ninety days after date, endorsed by T. L. Lawwell and Mrs. Annie V. Cook as sureties, and to further secure same executed a chattel mortgage to J. E. Huffman, trustee, transferring to him two Percheron mares.

Heath, in 1929, had borrowed some money from the Prudential Insurance Company and executed a deed of trust conveying his farm to secure the same.

In December, 1934, the loan was in default. Heath made application to the Federal Land Bank of Louisville for a loan to refinance his said indebtedness. He asked Mr. Huffman, president of the First National Bank of Shelbyville, to pay the loan to the Insurance Company and take an assignment of same, and then accept Home Owners Loan Corporation bonds in payment of same, to which the bank agreed. The bank paid the Prudential Insurance Company $2615.75 and took an assignment of the loan, on December 12, 1934.

On January 26, 1935, the Bank signed an ''Agreement to Accept Payment in Bonds,'' which contained the statement that this sum was in full payment of all indebtedness to it.

The Land Bank paid the First National Bank the sum of $2615.75 in bonds.

It appears that Heath executed a mortgage on his farm to the Land Bank to secure the loan of $2615.75.

It does not appear that the chattel mortgage to secure the First National Bank was released of record, or that a chattel mortgage of the mares was made to the Land Bank.

On April 22, 1935, Heath executed to the First National Bank a renewal of the note (due October 26, 1933) secured by a chattel mortgage on the two mares.

On October 22, 1935, he executed a note for $340, due six months after date, the note reciting that it was secured by a chattel mortgage on two mares.

On November 24, 1936, J. E. Huffman replevied the mares for the purpose of foreclosure.

On the trial of the case only one witness was introduced for the plaintiff, J. E. Huffman, who proved the indebtedness due on the $340 note and the chattel mortgage.

On cross-examination Huffman testified, without objection, as to the facts in regard to the H. O. L. C. loan from the Land Bank: That the First National Bank became the owner by assignment from the Prudential Insurance Company of America of its interest in a deed of trust executed by Heath on April 10, 1929, for which the Bank paid the Insurance Company $2615.75; that his Bank received

$2615.75 from the Land Bank in payment of same; that he executed for the First National Bank the "Agreement to Accept Payment in Bonds." He was asked the question whether he did not sign the agreement in full satisfaction of Heath's debts to his bank, and he replied: "It seems that I signed release to Federal Land Bank." He further testified that he did not read the agreement before signing it.

Only one witness was introduced for the defendant, the Deputy Register, who testified that the chattel mortgage, the assignment, and the mortgage from Heath to the Land Bank were recorded, and read them to the jury.

Heath did not testify.

██ ██ It is now contended by Heath, on appeal, that the bank accepted $2615.75 in full satisfaction of all its indebedness against him and signed a statement to this effect, which induced the Land Bank to make the loan, and that the First National Bank has violated the Home Owners' Loan Act, 12 U. S. C. A., section 1461 et seq., by compelling him to execute notes and a chattel mortgage on the mares subsequent to the H. O. L. C. loan, and for these reasons it cannot collect this amount and has no right to replevy the mares.

This case would probably be controlled by our holding in the opinion rendered in the case of R. L. Hays v. Commerce Union Bank et al. (unreported),[1] Maury Equity, filed on September 24, 1938, except for the fact that it affirmatively appears that the bill of exceptions does not contain all the evidence introduced at the trial in the lower court. The bill of exceptions shows that the Deputy County Register appeared with two of the record books of the County, under a subpoena duces tecum, and read from the record books the assignment of the Prudential Insurance Company mortgage to the Bank, the chattel mortgages from Heath to the First National Bank, and the mortgage from Heath to the Federal Land Bank of Louisville, Ky.

The chattel mortgages are copied into the bill of exceptions, but the mortgage from Heath to the Land Bank was not preserved in the bill of exceptions, and we have no evidence of its contents. Hence we cannot consider the assignment of error.

Presumably there was something in that deed of trust that caused the trial judge to direct a verdict in favor of the plaintiff.

---

[1]In the case of Hays v. Bank, supra, we held that a private agreement to take a second mortgage on the home for balance of the debt after the application of the proceeds of the H. O. L. C. loan was illegal and void and in violation of the H. O. L. C. statute, that the Bank would not be allowed to recover, and the illegal second mortgage would be cancelled in a suit by the home owner. Jessewich v. Abbene, 154 Misc. 768, 277 N. Y. S. 599; First Citizens Bank & Trust Co. v. Speaker, 159 Misc. 427, 287 N. Y. S. 831; Cook v. Donner, 145 Kan. 674, 66 P. (2d) 587, 110 A. L. R. 244; Stager v. Junker, 188 A. 440, 14 N. Y. Misc. 913; Pye v. Grumert, 201 Minn. 191, 275 N. W. 615, 276 N. W. 221.

If the bill of exceptions disclosed the fact that evidence was heard in the lower court that was not preserved in the bill of exceptions, then the judgment must be affirmed. Without the deed of trust we cannot judge of its legal effect. Pepper v. Gainesboro Tele. Co., 1 Tenn. App., 175, 178; Cosmopolitan Life Insurance Company v. Woodward, 7 Tenn. App., 394.

It results that the judgment of the lower court awarding the mares, under the replevin writ, to the plaintiff will be affirmed, and the cause will be remanded to the Circuit Court of Bedford County for the execution of the judgment. The costs of the lower court are adjudged against Heath, but the costs of the appeal are adjudged against Heath and the surety on his appeal bond.

Faw, P. J., and Felts, J., concur.