[L. A. No. 16834.  In Bank.—October 4, 1940.]

SHEDRICK E. SHIVER, Appellant, v. LIBERTY BUILD-ING–LOAN ASSOCIATION (a Corporation) et al., Respondents.

Charles S. Darden for Appellant.

M. J. Rankin, Milo V. Olson and Walter S. Home for Respondents.

EDMONDS, J.—The decisive question in this case concerns the validity of a $300 note secured by a second deed of trust exacted of the appellant by the respondent Liberty Building-Loan Assn. as a condition of its assent to the refinancing of a mortgage debt by the Home Owners' Loan Corporation.

The record shows that in 1934 the appellant sought the help of the Home Owners' Loan Corporation. He then owed the building and loan association a balance of $2,228 upon a note secured by a deed of trust upon his home. This obligation was finally refinanced. The appellant executed a deed of trust to the government agency to secure a note, the proceeds of which was paid to the association in the form of bonds. The association also received a note for $300 executed by the appellant and secured by a second deed of trust upon the property.

The appellant thereafter defaulted in making payments upon the $300 note and upon the institution of proceedings to foreclose the deed of trust securing it, he filed the present action asking that the sale of the property be restrained, that the $300 note and second trust deed be declared void, and that his title to the property be quieted against that encumbrance.

Upon trial of the cause the appellant testified that although his signature appeared on the note and trust deed, he had no remembrance of signing either of them and had refused at all times during the refinancing negotiations to agree to give the building and loan association any consideration in addition to the bonds. In conflict with this testimony was evidence offered on behalf of the association indicating that it had always insisted upon a second deed of trust as a condition of its assent to the refunding and that it had never made any attempt to conceal its demand. The secretary and manager of the association testified to several conversations with the appellant in which he stated that it would not agree to the pro· posed refinancing unless it received a secured note for $300. He also said that he had discussed the matter with the Home Owners' Loan Corporation. ''I made an effort,'' he said, ''to find out whether it was agreeable to them or not. I was in the office of the Home Owners' and discussed it with the individual that was handling it at the time, and he said: 'Send in your instructions to escrow, providing for a second trust deed of $300.00.' I have no letters. That was just a

conversation with one of the officials or clerks in the Home Loan office handling the matter at that time. That was the manner in which they handled those things at that time—they gave me certain papers to sign and in reference to the second trust deeds, you had to put your instruction into the escrow company, and it was understood with one of the officers in the Home Owners' Loan Corporation that we would sign those papers and then put our instructions in the escrow company regarding the second.''

According to his testimony, some time later the association received from a title company escrow instructions with the request that they be executed and returned, together with the papers necessary to consummate the refinancing. There was enclosed what is termed a ''consent to take bonds'' in the form of a letter addressed to Home Owners' Loan Corporation. This letter, which was signed by the association and returned to the escrow holder with other instruments, recites that if the indebtedness of the appellant was refinanced by the corporation, it would accept ''in full settlement . . . the sum of $1,579 face value of the bonds of Home Owners' Loan Corporation, to be adjusted with not exceeding $25 cash and thereupon . . . release all . . . claim . . . against said property''. However, the escrow instructions show a demand for the note and deed of trust now in controversy as part payment of the note it then held.

No express approval of these instructions by the Home Owners' Loan Corporation appears, but a representative testified that its files contain nothing to indicate it had refused to permit a second deed of trust on the property. He explained also that under some circumstances the corporation consented to a requirement by the creditor for a second trust deed.

Upon this evidence the trial court found that prior to the date of the ''consent to take bonds'', the association ''agreed to accept the bonds of the Home Owners' Loan Corporation at face value and cash not to exceed $24.99 and a note for $300 . . . to be secured by a deed of trust on said real property, in full satisfaction of the indebtedness then due and owing . . . '' It also found that no unfair advantage had been taken of the appellant by the association and that he was not induced to sign the note for $300 because of any false or fraudulent representations made by it. A further finding was that the note and deed of trust were not delivered without the consent of the Home Owners' Loan Corporation.

The principal contention of the appellant is that the written consent of the association to take bonds constitutes an accord and satisfaction, a release and a novation. On the other hand, the association insists that the instrument relied upon by the appellant does not express the whole contract and that, as found by the trial court, this was to accept bonds, $25 in cash, and a secured note for $300 in satisfaction of the original indebtedness to it.

As a matter of substantive law, where the parties to an agreement adopt a writing as the final and complete expression of that agreement an integration results; the act of embodying those terms in the writing becomes the contract. Under such circumstances, extrinsic evidence to vary the terms of the written instrument is excluded, because the writing is the contract itself. This rule applies when there is a writing which has been accepted as the final memorial of the agreement of the parties. (*Estate of Gaines,* 15 Cal. (2d) 255 [100 Pac. (2d) 1055], Rest., Contracts, sec. 230.) But in the present case there was no integration intended by the parties to the "consent to take bonds". It was only one of several instruments sent to the escrow holder as the basis for refinancing the property. Also, when it was necessary for the escrow holder to secure the consent of the association to take bonds bearing interest at a rate different from that originally offered by the Home Owners' Loan Corporation, the association agreed to the reduction but with the statement "it is understood that this does not change the instructions covering the second deed of trust". Parol evidence was therefore admissible to prove that the appellant agreed to give the association a note secured by a second deed of trust as a part of the consideration for its release of the indebtedness owed by him.

But even if the contract was integrated, parol evidence was admissible to show the true consideration, and the association was not bound by the recitals of consideration in the writing. It is elementary that the truth of the recital in a written instrument concerning the consideration is not conclusive, but that extrinsic evidence may be received to show the true consideration. (*Johnston* v. *Courtial,* 216 Cal. 506 [14 Pac. (2d) 771].) Upon that theory the finding of the trial court was that the consideration included the $300 note and deed of trust and there is substantial evidence to support it.

These conclusions and the decision in *McAllister* v. *Drapeau,* 14 Cal. (2d) 102 [92 Pac. (2d) 911, 125 A. L. R. 800], are not inconsistent if the facts of each case are kept clearly. in mind. In the McAllister case, which concerned a similar written consent executed by a creditor, the trial court found that the execution and delivery of the note secured by a second deed of trust was made "under threat of foreclosure". It also found that the Home Owners' Loan Corporation had no knowledge that these instruments had been required by the creditor and executed by the debtor. Under these circumstances the holding that the consent to take bonds was an accord and satisfaction is somewhat inconsistent with the trial court's finding that the note sued upon had been executed under duress. But the further finding that the creditor did not inform the Home Owners' Loan Corporation that it was requiring the debtor to execute a note secured by a deed of trust compelled the affirmance of the judgment in favor of the debtor.

As stated in the McAllister case, a note and deed of trust required by a creditor in addition to bonds of the Home Owners' Loan Corporation, if executed with its knowledge or consent, are valid and enforceable. However, where such instruments are secretly or fraudulently exacted by the creditor, they are void. This holding follows the weight of authority. (28 Cal. Law Rev. 232; 13 So. Cal. Law Rev. 162; 52 Harv. Law Rev. 842; note 110 A. L. R. 250, and 121 A. L. R. 119.) The Home Owners' Loan Corporation, under its regulations, will refuse as a matter of policy to refund a first mortgage in any case where the creditor demands a second, unless it appears that the financial arrangements and the financial ability of the debtor are such that he will have a reasonable opportunity to pay off both encumbrances. It is essential, therefore, in order that the corporation may ascertain the facts in a given case, that a full disclosure be made to it of the amount and terms of a proposed second lien, and whether it is reasonably probable that the home owner will be able to fulfill his obligations.

According to the findings of the trial court in the present case the creditor made this disclosure and the rule applied in the McAllister case is not available to the appellant.

The judgment is affirmed.

Shenk, J., York, J., *pro tem.,* and Spence, J., *pro tem.,* concurred.

CARTER, J., Dissenting.—I dissent.

The question presented for determination on this appeal is whether a lien holder who executes to the Home Owners' Loan Corporation a written consent to accept the bonds of said corporation and cash in a certain amount in full settlement of its lien and release all claim it has against the property covered thereby, can thereafter require the property owner to execute a note secured by a second trust deed on said property to cover the difference between the amount of the lien and the value of such bonds and cash without obtaining from said Home Owners' Loan Corporation its consent in writing to the execution of such note and second trust deed.

The majority opinion concedes that there is no evidence in the record that the Home Owners' Loan Corporation consented to the execution of the note and second trust deed for $300 except the testimony of the secretary of the defendant that he discussed the matter with the individual in the office of said corporation who was handling it at the time, and he authorized the inclusion in the escrow instructions of the second trust deed. The evidence does not show that anyone connected with the Home Owners' Loan Corporation saw the escrow instructions in question or approved the same, and it is admitted that the Home Owners' Loan Corporation did not execute any document modifying the terms of the consent and release executed by the defendant which, among other things, declared that the defendant "hereby consents, if said refunding can be consummated, to accept in full settlement of the claim of the undersigned the sum of $1579.00 face value of the bonds of Home Owners' Loan Corporation to be adjusted with not exceeding $25.00 cash and thereupon to release all claims of the undersigned against said property".

The majority opinion holds that notwithstanding this declaration in writing, the defendant had the right to demand and receive from the property owner a promissory note secured by a trust deed on said property for $300 in addition to the bonds and cash which the defendant received from the Home Owners' Loan Corporation. This holding is predicated upon the erroneous assumption that parol evidence was admissible to prove that the consideration mentioned in the agreement between the Liberty Building-Loan Association and Home Owners' Loan Corporation was not the true consideration which the former agreed to accept for a release of its

claim against the plaintiff's property. It is my view that the instant case comes within the well-recognized limitation upon the right of a party to vary by parol evidence the terms of a contract and prove the true consideration, which rule was declared in the case of *Harding* v. *Robinson*, 175 Cal. 534, at p. 542 [166 Pac. 808], as follows: "Where the statement in a written instrument as to the consideration is more than a mere statement of fact or acknowledgment of payment of a money consideration, and is of a contractual nature, as where the consideration consists of a specific and direct promise by one of the parties to do certain things, this part of the contract can no more be changed or modified by parol or extrinsic evidence than any other part, for the party has the right to make the consideration of his agreement of the essence of the contract, and when this is done the provision as to the consideration for the contract must stand upon the same plane as the other provisions of the contract with reference to conclusiveness and immunity from attack by parol or extrinsic evidence." Clearly there can be no doubt that the essence of the contract here under consideration was the amount of consideration which would be required by the defendant Liberty Building-Loan Association to grant a release of all its claim against the plaintiff debtor's property and that the case comes within the rule expressed in *Harding* v. *Robinson, supra.* The above rule is quoted with approval in the case of *Koeberle* v. *Hotchkiss*, 4 Cal. App. (2d) 252, at page 256 [40 Pac. (2d) 911], where the court further states: " 'While the recitals of consideration in written instruments are not conclusive as to the amount or character or payment of the consideration, when these latter matters are the subject of litigation, evidence of want of consideration or of a different consideration is not admissible for the purpose of varying, contradicting and defeating covenants by which rights are expressly vested.' (*Arnold* v. *Arnold*, 137 Cal. 291 [70 Pac. 23]; *Leonard* v. *Miner*, 120 Cal. 403 [52 Pac. 655].) Where such an alleged parol agreement changes the terms of a written contract and reduces it from an absolute to a conditional or contingent obligation, 'it makes for the parties another and different agreement'. (*First National Bank* v. *Fickert*, 51 Cal. App. 99 [196 Pac. 112]), and it is not admissible for that purpose." It must necessarily follow that if parol evidence was not admissible to alter or vary the terms of the agreement between the Liberty Building-Loan Association and the Home

Owners' Loan Corporation, there is no competent evidence in the record to support the finding of the trial court that the Home Owners' Loan Corporation consented to the execution by plaintiff of the note and trust deed for $300, and this finding must necessarily fall.

In my opinion, the conclusion reached in the majority opinion is not only unsound and contrary to settled principles of law, but opens the door for fraud and unconscionable conduct of lienholders in cases of this character.

This court has held that a contract entered into between the property owner and the lienholder for the payment to the lienholder of a sum in addition to the amount which the latter receives from the Home Owners' Loan Corporation in satisfaction of his indebtedness without the consent of such corporation is void as against public policy. When contracts of a particular class or character are declared to be void as against public policy, the fact that an individual contract may be free from actual fraud or oppression will not save it. The law considers the general nature, effect and tendency of contracts that come within the inhibited class and condemns them all.

In *McAllister* v. *Drapeau*, 14 Cal. (2d) 102 [92 Pac. (2d) 911, 125 A. L. R. 800], wherein this court affirmed a judgment canceling a secret second trust deed executed by the debtor upon insistence of the creditor, it is declared:

"It is obvious, from a reading of the statute and the rules and regulations above quoted, that the main and controlling purpose of the act was to assist small home owners who, because of the then existing financial conditions, faced loss of their homes through inability to meet the charges due on mortgages on their home property. It is to be noted that the act places no compulsion, direct or indirect, on the creditor. The creditor had complete liberty of action. If he refused to accept the offer of the Home Owners' Loan Corporation as to the amount of bonds and cash it would advance to refund the debt, there was nothing the Home Owners' Loan Corporation or the debtor could do about it. It was contemplated, however, that many creditors would, and experience under the act proved that many did, accept a reduction in the amount of the existing loan in order to secure liquid assets such as bonds of the Home Owners' Loan Corporation rather than foreclose on the property and have to hold it until conditions in the real estate market improved. The act provides

that such reduction should be passed on to the home owner, the debtor. The rules and regulations contemplated that under some circumstances it would be to the interest of the home owner to give a second mortgage to the creditor to secure a part of the refunded debt, *but such rules and regulations provided that the Home Owners' Loan Corporation would not refund the first mortgage if the creditor demanded a second unless the financial ability of the debtor and the financial arrangements were such that the debtor would have a reasonable opportunity to pay off both mortgages. Obviously, before these facts could be ascertained, a full disclosure of the amount and the terms of the proposed second lien would have to be made to the Home Owners' Loan Corporation. The securing of a second lien by the creditor without such disclosure is clearly in violation of the letter and spirit of the statute and regulations.''*

While it may be true that the same degree of ''secrecy'' was not here employed by the creditor in exacting the second trust deed, the fact still remains that there is a dearth of evidence to establish ''full disclosure to the Home Owners' Loan Corporation of the amount and the terms of the proposed second lien'', as contemplated and required by the decision in *McAllister* v. *Drapeau, supra,* in order to permit the Home Owners' Loan Corporation before granting its loan to determine whether the debtor upon refinancing could carry the two loans. True, one of the officers of the creditor testified that he had a conversation with respect thereto ''with one of the officials or clerks'' in the Home Loan office but nowhere is there any showing that said individual, whoever he may have been, had any authority or power to consent on behalf of the Home Owners' Loan Corporation to the then contemplated second lien. In *Council* v. *Cohen,* (Mass.) 21 N. E. (2d) 967, 968, wherein a lien second to a Home Owners' Loan Corporation lien was declared void, it is stated that ''There was some evidence . . . offered that the attorney communicated with some one connected with the corporation (Home Owners' Loan Corporation) with respect to the second mortgage, but I do not find that it was authorized or even known to the proper officers of the corporation (Home Owners' Loan Corporation) although the attorney doubtless acted in good faith.''

In the case now before us the trial judge declared at the conclusion of the evidence that ''There is no evidence in this

record that the Home Owners' Loan Corporation consented to the execution of the second trust deed. They handed in certain (escrow) instructions but there is no evidence in this record that they were familiar with the contents of the escrow." It is true that the trial judge apparently later changed his mind and found: "That it is not true that the said plaintiff made, executed and delivered the promissory note, and (second) trust deed for the sum of $300.00 above described, without the consent of said Home Owners' Loan Corporation," but this finding may not rely for support upon the fact that the Home Owners' Loan Corporation, along with the parties, offered certain escrow instructions for, as stated by the trial court at the conclusion of the trial, "there is no evidence in this record that they (Home Owners' Loan Corporation) were familiar with the contents of the escrow". In addition, one of the Home Owners' Loan Corporation officers testified that there was "no instrument in the files in the form of a request by the creditor to place a second trust deed on the real property . . . or of any consent on the part of the Home Owners' Loan Corporation to the debtor or to the creditor to place a second trust deed for $300.00 on said property". In other words, the evidence in this case is far from satisfactory in establishing notice to and consent of the Home Owners' Loan Corporation to a second lien, as contemplated in *McAllister* v. *Drapeau, supra,* which decision, came down subsequent to the trial and judgment herein and was not therefore available for the guidance of the court below. Under the circumstances, a reversal of the judgment in this case should be ordered to permit of a full and clear showing on this issue.

Moreover, *McAllister* v. *Drapeau, supra,* announces a second and distinct ground of decision which would appear to require a reversal, rather than an affirmance, of the judgment in the case at bar. It definitely appears from the record herein, as in *McAllister* v. *Drapeau, supra,* that the creditor signed the usual consent and release required by the Home Owners' Loan Corporation which, among other things, declared that the creditor "hereby consents, if said refunding can be consummated, to accept in *full settlement of the claim* of the undersigned the sum of $1,579.00 face value of the bonds of Home Owners' Loan Corporation, to be adjusted with *not exceeding* $25 cash and thereupon to release all the claim

of the undersigned against said property''. The express mention by the creditor in said consent and release of a *$25 cash* adjustment to accompany the Home Owners' Loan Corporation bonds, and its complete silence as to the additional note for $300 and accompanying second lien, definitely tends to indicate an attempt to conceal the note and second lien from the Home Owners' Loan Corporation. But aside from this, in *McAllister* v. *Drapeau, supra,* p. 113, it is held that where, as here, the creditor agrees to accept the bonds in ''full settlement'', without any mention of a second lien, an accord and satisfaction, novation or release results. In this connection the cited case declares that ''Several of the courts to which the problem here involved has been presented, in addition to holding the secret second mortgage illegal, have held that in signing the 'Mortgagee's Consent to Take Bonds', above quoted, the creditor agreed to accept such bonds 'in full settlement' of his claim, and that such agreement constitutes an accord and satisfaction, a release or a novation. (*Cook* v. *Donner, supra; Chaves County Building & Loan Assn.* v. *Hodges, supra.* The holding of these courts is sound. The agreement signed by the creditor was to accept the bonds 'in full settlement of the claim of the undersigned . . . and thereupon to release all the claim of the undersigned against said property'. The argument of *amici curiae* that this broad language only constitutes an agreement by the creditor to release his security and does not constitute an agreement to release the debt secured is unsound. In the instant case, at the time California Security Loan Corporation signed the consent, the debtor owed it but one debt, which was secured by the recorded first mortgage, and partially secured by the secret unrecorded second mortgage. By signing the consent, that company agreed to release its entire 'claim'. This could have no reasonable meaning other than that it was an unqualified agreement in writing to release the existing debt for the amount of bonds offered. This constitutes a valid release, and an accord and satisfaction. (Secs. 1524, 1541, Civ. Code.)''

This latter ground would appear equally applicable here, for the creditor, as in the cited case, agreed in writing to accept $25 in cash and the Home Owners' Loan Corporation bonds ''In full settlement of (its) claim'', without any reference being made to the $300 note and the second lien to secure the same. It is also interesting to note that *McAllister*

v. *Drapeau, supra,* p. 114, expressly declares "That this illegality argument (i. e., the first ground of the decision therein having to do with the *secrecy* of the second lien) has no application to the second ground set forth in this opinion, namely, that the 'Mortgagee's Consent' constituted a release, and an accord and satisfaction." In other words, regardless of any secrecy in the execution of a second lien, such second lien is void and unenforceable where, as here, the creditor accepts the Home Owners' Loan Corporation bonds "in full settlement" of his claim. A satisfaction and release of the claim thereupon results.

In a supplemental brief defendant advances the argument that the escrow holder was the agent of Home Owners' Loan Corporation, that the agent's knowledge of the defendant's deed of trust was imputed to the principal, that Home Owners' Loan Corporation having been thus informed of the deed of trust the execution of the same was not kept secret from that corporation, and further that paragraph 7 of the latter's escrow instructions contemplated and required the escrow holder to inform Home Owners' Loan Corporation of the deed of trust. In support of these contentions defendant relies on the case of *Blackburn* v. *McCoy,* 1 Cal. App. (2d) 648 [37 Pac. (2d) 153], but this case does not hold that an escrow holder is the general agent for all parties to the escrow, but holds that if escrow instructions create an agency in the escrow holder it can not be a general agency for each one of the parties, and that if an agency is so created it is one "limiting the obligations of the escrow in accordance with the instructions given by such party".

It has been held that a corporation is not chargeable with knowledge of an agent who has no authority to bind the corporation. (*Bourne* v. *Root,* 125 Cal. App. 461 [13 Pac. (2d) 1066].) There is nothing in the record which indicates that the escrow holder in this transaction was empowered to bind Home Owners' Loan Corporation in any particular except as stated in the latter's escrow instructions, and the instructions pleaded do not authorize the approval or acceptance by the escrow holder of defendant's deed of trust. In *Markowitz* v. *Berg,* 125 N. J. Eq. 56 [4 Atl. (2d) 410], the fee attorney for Home Owners' Loan Corporation had knowledge that the mortgagor's creditor demanded in settlement a second mortgage in addition to the Home Owners' Loan Corporation bonds. The duties of the fee attorney were to pass on the

title, as required of the escrow holder here, and to assist in the negotiations. The plaintiff there contended, as does defendant here, that the fee attorney was the agent of Home Owners' Loan Corporation and that his knowledge of the second mortgage was the knowledge of the corporation. The court held that his authority was limited to examining the title, to delivering bond authorizations to encumbrancers, and to receiving the mortgagor's first lien mortgage in favor of Home Owners' Loan Corporation, that he was a special agent of the corporation without authority to approve of or to permit plaintiff to take the second mortgage, that the execution of the second mortgage without knowledge of Home Owners' Loan Corporation was in contravention of the statute and the regulations made thereunder, and that the second mortgage was void as against public policy.

It frequently happens that an escrow holder acts for several parties in the same transaction, or in interconnected transactions relating to the same property, amounting to two or more separate escrows in one portfolio. In such case an escrow holder is a special agent for each party in so far and only as far as such party's interest or instructions is not deemed to be imputed or imparted to all others who have given instructions in the same escrow. Unless the instructions of two or more parties are so interrelated as to require each to be informed of the requirements of the other, no duty rests on the escrow holder to communicate to one party any item in the other's instructions. It would be a gross breach of confidence on the part of the escrow holder to permit one party to read or to obtain knowledge of the directions given by any other party to the escrow instructions relating to the second deed of trust,—only plaintiff and defendant were parties thereto.

Paragraph 7 of Home Owners' Loan Corporation's escrow instructions has reference solely to such documents as relate to its own loan and not to any mortgage or deed of trust that might be placed of record following the corporation's first mortgage. The language is explicit in requiring the delivery of such documents as would enable Home Owners' Loan Corporation to "pass on the eligibility of our loan". The defendant's deed of trust did not affect the eligibility of that loan because the mortgage securing the same was required to be a first lien on the property.

No obligation rested on defendant to discharge plaintiff's former liability except on payment of the full amount in cash according to the terms of their contract. It was not required to accept Home Owners' Loan Corporation bonds, but having voluntarily agreed, upon valid and valuable consideration, so to do it was bound by its contract, "to release all claims" against plaintiff's property upon receipt of the bonds. This contract was made by it directly with Home Owners' Loan Corporation and for the benefit of plaintiff, and constituted a part, at least, of the consideration and inducement to Home Owners' Loan Corporation to make its loan.

A review of the authorities relative to the validity of a secret second encumbrance when the first mortgage is held by the Home Owners' Loan Corporation, and a discussion of the principles of law contained in these authorities is contained in the January, 1940, issue of the California Law Review, volume 28, pages 232, 235, inclusive. It appears from this article that second trust deeds on mortgages executed under the circumstances as disclosed by the record in the case at bar have been uniformly held invalid and canceled by the courts.

For the foregoing reasons, I cannot join in the majority opinion in the instant case as I am persuaded that the ends of justice, as well as the weight of authority, requires a reversal of the judgment.