HARRY RESSEN, SPECIAL ADMINISTRATOR,
SUBSTITUTED FOR SARAH RESSEN, DECEASED, AND
ANOTHER v. NORTHWESTERN NATIONAL BANK & TRUST
COMPANY OF MINNEAPOLIS AND OTHERS, EXECUTORS
AND TRUSTEES OF ESTATE OF C. ARTHUR LYMAN.[1]

January 16, 1953.

No. 35,830.

*C. C. Champine* and *Samuel Dolf,* for appellants.
*Charles M. Bank,* for respondents.

KNUTSON, JUSTICE.

Appeal from a judgment for plaintiffs entered upon findings of fact, conclusions of law, and order for judgment of the trial court.

Plaintiffs were the owners of certain real property in the city of Minneapolis, the description of which is not important. At a foreclosure sale on September 12, 1933, the property was bid in by C. Arthur Lyman, mortgagee, for the sum of $3,620.10. On October 10, 1933, Lyman signed a written consent to accept $3,620.10 face

---

[1]Reported in 56 N. W. (2d) 663.

value of bonds of the Home Owners' Loan Corporation (referred to hereinafter as HOLC) in full satisfaction of the amount for which the property was bid in at the foreclosure sale. The consent, by its terms, was to be binding for 60 days. Plaintiffs had applied for a loan of $4,218.56. HOLC refused to grant a loan for the amount of the application but did grant a loan of $3,480. After payment of preferred items, the proceeds of the loan available for payment of the foreclosed mortgage amounted to $2,861.81. The note and mortgage to HOLC were signed on May 17, 1934. On May 18, 1934, plaintiffs executed to defendants a second note, secured by a mortgage on the property, in the amount of $906.71, that being the difference between the net proceeds of the HOLC loan and the amount due defendants, with interest. In the meantime, C. Arthur Lyman had died. C. C. Champine, who acted as attorney for defendants in the matter, testified at the trial that shortly before May 18, 1934, plaintiffs asked if the holders of the sheriff's certificate would be willing to discount the amount due and that they were told that there would be no discount. He said that the holders then were asked if they would take a second mortgage and that plaintiffs were informed that defendants would consent to accept a second mortgage for the balance but that HOLC would have to have knowledge of the transaction. Defendants were told by plaintiffs that one L. F. Anderson was handling the loan for HOLC. Champine, on objection of plaintiffs, was not permitted to disclose his conversation with Anderson. Sarah Ressen testified that she and her husband signed the papers, consisting of the note and second mortgage, and that they took them to HOLC. Her testimony in that regard on cross-examination was as follows:

"Q. Well, you do not deny that there was discussion with Lyman and Champine, his attorney, before the HOLC loan was made, and the discussion about the second mortgage, and that the mortgage was prepared and signed by you and your husband.

"A. They called us to the office and we signed, and that is all what we know, never spoke about anything. We took the paper to

the Home Loan; that is all that we know. Then we completed the loan at the HOLC.

"Q. I am referring to the time when you were up to Mr. Lyman's office and Mr. Champine's office. At that time you were up there and signed that mortgage and note, was your husband with you?

"A. Yes, he signed and I signed."

Champine further testified that on October 11, 1934, HOLC bonds in the face amount of $2,850, cash in the sum of $11.81, and the second note and mortgage were delivered to him for defendants by L. F. Anderson, representing HOLC, and that at that time he delivered the certificate of redemption to Anderson.

The second mortgage was not filed for record until January 16, 1937. Champine testified that the delay was due to the inability of defendants to procure the owners' certificate of title. Nothing was ever paid on the second mortgage. On March 23, 1948, it was foreclosed, and the property bid in at the foreclosure sale for the amount then due thereon. Thereafter and during the period allowed for redemption, this action was brought to set aside and cancel of record the mortgage and the foreclosure thereof. The court found that the note and mortgage were given without consideration, were against public policy, and were void and ordered their cancellation.

■ The testimony of Champine is neither impeached nor contradicted. Therefore, the court is not at liberty to disregard it. O'Leary v. Wangensteen, 175 Minn. 368, 221 N. W. 430.

■ The great weight of authority is that a note and mortgage, inferior to an HOLC loan, given in addition to bonds of the HOLC, are not *ipso facto* void if executed with the knowledge and consent of HOLC (Sirman v. Sloss Realty Co. Inc. 198 Ark. 534, 129 S. W. [2d] 602; Shiver v. Liberty Building-Loan Assn. 16 Cal. [2d] 296, 106 P. [2d] 4; 89 U. of Pa. L. Rev. 828; Ridge Inv. Corp. v. Nicolosi, 15 N. J. Misc. 569, 193 A. 710; Williston Sav. & Loan Assn. v. Kellar, 74 N. D. 338, 22 N. W. [2d] 30; Bay City Bank v. White, 283 Mich. 267, 277 N. W. 888; Murphy v. Omaha Loan & Bldg. Assn. 141 Neb. 230, 3 N. W. [2d] 403; Chicago Title & Trust Co. v. Szymanski,

289 Ill. App. 600, 7 N. E. [2d] 608; Ganchoff v. Bullock, 234 Wis. 613, 291 N. W. 837; McVicar v. Peters, 12 Wash. [2d] 92, 120 P. [2d] 485; Walker v. Oakley, 347 Pa. 405, 32 A. [2d] 563 [cases pro and con collected]) but are void when executed secretly or are fraudently exacted (McAllister v. Drapeau, 14 Cal. [2d] 102, 92 P. [2d] 911, 125 A. L. R. 800 [Notes on this decision in 13 So. Cal. L. Rev. 162 and 28 Cal. L. Rev. 233], reversing 85 P. [2d] 523 [Note on this decision in 52 Harv. L. Rev. 842]; Kraetsch v. Stull, 238 Iowa 944, 29 N. W. [2d] 341 [many cases collected]; Annotations, 100 A. L. R. 1413, 110 A. L. R. 250, 121 A. L. R. 117, 125 A. L. R. 809). For other articles and notes discussing various phases of the subject, see 28 Cal. L. Rev. 232; 25 Cornell L. Q. 304; 38 Mich. L. Rev. 508; 12 Okl. St. Bar J. 1470; 89 U. of Pa. L. Rev. 828; 45 W. Va. L. Q. 332; 5 John Marshall L. Q. 373.

The record in this case will not sustain the court's findings. There is nothing to dispute the fact that the note and mortgage, after being executed by plaintiffs, were taken by them to the office of HOLC and there held until they, together with the HOLC bonds and the cash to make up a slight difference in amount, were delivered to defendants in return for the certificate of redemption. Under these circumstances, we cannot hold that HOLC was not fully advised of the execution of the second note and mortgage and that it did not consent thereto.

Plaintiffs rely upon our cases of Pye v. Grunert, 201 Minn. 191, 275 N. W. 615, 276 N. W. 221; Kniefel v. Keller, 207 Minn. 109, 290 N. W. 218; and Pries v. Hurning, 218 Minn. 189, 15 N. W. (2d) 515. All of these cases are distinguishable on the facts from the case now before us. The Pye case involved a violation of 12 USCA, § 1467(e), which is a part of the home owners loan act of 1933, prohibiting any contract with an applicant for an HOLC loan for payment of the difference between the market value and the par value of the bonds of HOLC. We held that any contract made in violation of this express provision of the act was void.

The Kniefel case involved a loan negotiated with the Federal Land Bank. Plaintiff in that action was the owner of a farm in

Steele county. He entered into an executory contract for the sale of the land to defendants for an agreed price of $11,800, of which $3,000 was paid. Plaintiff and defendants then entered into an agreement, by the terms of which defendants were to apply for a federal farm loan to meet the balance of $8,800. Plaintiff. agreed to (207 Minn. 110, 290 N. W. 219) " 'accept the sum realized from said loan and will take the note of' defendants 'for the balance necessary' to make up the difference." The loan was approved for an amount which would permit payment to plaintiff of slightly more than $7,000. Plaintiff thereupon executed a creditor's agreement, under which he agreed to accept as full and complete payment of the balance of the purchase price a sum less than that which was due, which sum was later paid to him and accepted. He thereupon executed a receipt (207 Minn. 111, 290 N. W. 219) "for full payment of deed." Before the completion of the loan, both parties entered into a written agreement (207 Minn. 112, 290 N. W. 220) "for the purpose of inducing" the land bank to make the loan, which provided in part as follows:

"That I will accept in full and complete settlement and payment of my above claim the sum of $7,048.00, and that I have not, directly or indirectly, made or entered into any agreement or understanding with anyone whomsoever whereby I shall receive from said debtor(s) any note, mortgage or other consideration save and except the sum last above mentioned; that when such sum has been received by me that said debtor(s) will not remain indebted to me upon any account whatsoever; that I will not, after having received such sum, attempt in any way, directly or indirectly, to collect, nor will I accept, from said debtor(s) upon and because of the above claim anything of value whatsoever.

"This agreement is for the express benefit of the debtor(s) or any of them, as well as The Federal Land Bank of Saint Paul, the Land Bank Commissioner, and the Federal Farm Mortgage Corporation."

We held that the agreement made in violation of the scale-down agreement was against public policy and, as such, was fraudulent and void.

Pries v. Hurning, 218 Minn. 189, 15 N. W. (2d) 515, *supra*, comes closer to the case now under consideration than the others. That also involved a loan from the Federal Land Bank. The action was on a note executed by defendants to one Pedersen as the difference between the amount due on a note secured by a mortgage on their farm and the amount realized out of a loan made by the Federal Land Bank. The amount due on the mortgage was approximately $9,000. The amount available out of the loan was $7,751.88. The authorization directed the local agent of the Federal Land Bank to use the proceeds for the payment of all defendants' existing debts, discharging all liens on their property, and paying out of a $300 reserve the cost of painting and repairing the farm buildings. It directed the local agent to use the proceeds of the loan exclusively for the purposes mentioned, to procure and file releases of all liens and encumbrances prior to payment, and, if these conditions could not be fulfilled, to return the vouchers for closing the loan to the land bank. The agent was notified that he had no authority to deviate from the written directions. *Pedersen was informed of these directions.* He stated that he would not accept the money under these conditions but later accepted and cashed vouchers for the amount tendered him and executed and delivered a satisfaction of the mortgage reciting that the note secured by the mortgage had been fully paid and satisfied. We held that the note sued on was void, following the Kniefel case.

In the instant case, defendants' decedent signed an agreement to accept bonds of the HOLC for the face value of $3,620.10, the full amount decedent then had coming. Defendants, as representatives of his estate, finally received bonds of the face value of $2,850, plus a small amount of cash. At no time did decedent or defendants agree to accept that amount in full settlement of their claim unless such consent can be inferred from the acceptance of the bonds themselves. The difficulty with this inference is that prior to the

completion of the loan defendants had refused to discount the obligation but had agreed to accept a second mortgage for the difference, whereupon plaintiffs executed a note and mortgage for such difference, taking them to HOLC. As far as appears from the record, the note and mortgage remained in the possession of HOLC from the date of execution, which was sometime during the month of May, until the loan was finally closed in October; they were then delivered by the representative of HOLC to defendants, together with HOLC bonds and a small amount of cash sufficient to make up the amount which defendants then had coming; and, thereupon, a certificate of redemption was given to the HOLC representative in return for such bonds and the note and mortgage. To hold under these circumstances that the evidence establishes that HOLC did not consent to the second note and mortgage or that defendants waived their right to rely on the second mortgage as part payment of the certificate of redemption would be to hold directly contrary to all the evidence in the case. The evidence here is conclusive that the second mortgage was neither secretly taken nor fraudulently exacted. The fact that the notice of allowance of the loan forwarded by HOLC to plaintiffs stated that the loan "must * * * satisfy the Mortgage" is not sufficient to invalidate the second mortgage under the facts in this case, in the absence of a showing that such direction was called to the attention of defendants. On the contrary, it must be held that the knowledge of the agent or representative of HOLC gained in connection with the closing of the loan is imputable to HOLC. McVicar v. Peters, 12 Wash. (2d) 92, 120 P. (2d) 485; Shiver v. Liberty Building-Loan Assn. 16 Cal. (2d) 296, 106 P. (2d) 4; Ridge Inv. Corp. v. Nicolosi, 15 N. J. Misc. 569, 193 A. 710; Murphy v. Omaha Loan & Bldg. Assn. 141 Neb. 230, 3 N. W. (2d) 403.

Had defendants received and accepted bonds in the amount of $3,620.10, the amount which C. Arthur Lyman had agreed to accept in the first instance, we would be compelled to hold under our decision in the Pye case that their acceptance of the bonds was a complete settlement of the obligation, even though the time speci-

fied in the agreement had expired, but it is obvious that defendants did not receive and did not accept the amount specified in this agreement, and the evidence is conclusive that they at no time agreed to accept a lesser amount. The court's amended findings state—

"That at the time of closing of said loan on May 17, 1934, the Home Owners' Loan Corporation paid to the C. Arthur Lyman estate in Home Owners' Loan Corporation's bonds in the amount of $2,850.00, and said estate by accepting said bonds consented thereto to receive said bonds."

It is significant to note that the vital fact that defendants consented to accept such reduced amount of bonds in full satisfaction of the debt was eliminated from the court's original findings and is not to be found in the amended findings. Nor would such finding be justified by the evidence. Neither is there a finding that the second mortgage was secretly taken or fraudulently exacted, and here, again, it is evident that such finding would not be justified by the evidence. The court's finding that the time of the closing of the loan was May 17, 1934, is also contrary to the evidence. The evidence is conclusive that the loan was not closed until October 11, 1934. At that time the bonds, together with the second mortgage, were delivered to defendants, and they in turn executed a certificate of redemption. The receipt of the Home Owners' Loan Corporation dated October 11, 1934, shows that on that date HOLC received of C. C. Champine the certificate of redemption which was signed on September 10, 1934, together with a certified copy of letters testamentary in the estate of C. Arthur Lyman. The mere fact that the HOLC mortgage was executed on May 17, 1934, and defendants' second mortgage was executed on May 18, 1934, would not establish the fact that the second mortgage was executed without any consideration in view of the fact that the entire deal was not closed until sometime in October 1934. The date of the execution of these instruments does not establish the date of closing of the transaction.

322

Under the evidence in this case it is our opinion that the second note and mortgage were given in good faith, with the full knowledge and consent of HOLC, and, therefore, are valid and existing obligations.

Reversed.

MR. JUSTICE ROGER L. DELL, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.