**JOHNSTOWN BANK v RUNNELS et**

Ohio Appeals, 5th Dist, Licking Co.

Decided February 28, 1940.

584

## OPINION

By SHERICK, PJ.

The farm property owned and occupied by the Runnels was mortgaged to The Johnstown Building & Loan Association. The appellee, The Johnstown Bank, also had two judgment liens against the property, both of which grew out of confessions upon warrants of attorney that were embodied in unsecured promissory notes. The appellants, desiring to refinance, made application for a land bank commission loan. The loan was granted and the mortgagee agreed therein. The record does not disclose the terms thereof, or whether the mortgagee acceded to a diminution of its debt or acceptance of Home Owners' Loan Corporation bonds in full satisfaction of the debt due it. As a prerequisite to the loan, the commissioner required that the two judgment liens be first satisfied and discharged. The manner in which this was to be done seems not to have concerned the commissioner. However, Runnels did go to William A. Ashbrook, president of the appellee bank, who agreed to and did satisfy these judgments of record upon the future promise of the appellants to execute a note to the bank for the sums due it as evidenced by the two judgments. The note was to be secured by a chattel mortgage. The note and mortgage were subsequently executed and delivered. Some payments were made thereon. Later a new cognovit note and chattel mortgage for the balance due were substituted. Payments were made thereon until finally default occurred whereupon the bank caused the note to be placed in judgment.

The present proceeding grows out of a motion made within term, which seeks to vacate this judgment for the reason that there was no consideration for the note. The matter was heard and the motion was denied.

Edward Kibler, Newark, for appellee.
Ernest T. Johnson, Newark, for appellants.

From this order the Runnels appeal on a question of law.

It is the claim of appellants that the obligation sued upon is contra to the federal public policy and is unenforceable at law by reason of the provisions of the Federal Farm Mortgage Corporation Act, particularly that portion thereof denominated, Title 12, Section 1016d, U. S. Code, which reads:

"No loan shall be made under this section unless the holder of any prior mortgage or instrument of indebtedness secured by such farm property arranges to the satisfaction of the Land Bank Commissioner to limit his right to proceed against the farmer and such farm property for default in payment of principal."

In support of this assertion we are directed to a number of authorities, which are to be found digested in the notes appearing in 110 A. L. R. 250, and 121 A. L. R. 117. These annotations refer to reports of those cases to which the notes are appended and also to Dayton Mortgage & Investment Co. v Theis, 62 Oh Ap 169, 23 N. E. (2d) 511. Practically all of these adjudications are concerned with situations wherein a farm lienholder has agreed in writing with the land bank commissioner to accept Home Owners' Loan Corporation bonds and cash in a sum less than the full amount of the lien in full satisfaction of his debt, and has therein further agreed to forego the deficiency but at the same time has entered into a secret agreement with his debtor, the farm owner, for payment of the deficiency, which is not disclosed to the commissioner, and this agreement is thereafter sought to be enforced in a court of law. We are in accord with the results reached in such situations. But is the present controversy such a case. The answer to this query is this court's problem.

Clearly it was the purpose and intent of Congress by this act to aid distressed farm owners. It ▬▬▬▬▬ was intended to preserve farm homes by avoiding foreclosures; by gathering indebtedness into one obligation, held by one creditor, that is, the federal government; by reducing interest rates; and by providing for long term liquidation. The act had a secondary and inescapable correlative purpose. A lienholder, who was willing to accept a reduction of his claim, might receive negotiable government obligations and cash and be, thereby benefited in the liquidation of a frozen asset.

Considering its related purposes and results accomplished, its general intent may be concisely stat- ▬▬▬▬▬ ed to have been to create a novation by agreement between debtors and lien creditors. It is equally certain that the act was not intended as a general bankruptcy statute to relieve a distressed farm owner of all his indebtedness by the act of a land bank commissioner in sanctioning a government loan.

In the situation here encountered the building and loan association is the assenting mortgagee. The plaintiff bank never was asked to, or did it, agree to a reduction of its debt. It was not benefited by the refinancing. It simply did the debtor a favor by relinquishing its lien and giving the government the prior and first lien on the farm.

Can the fact that the commissioner made the loan without seeing to it that the bank made an arrangement to his satisfaction to limit its right to proceed against the farmer and such farm property prejudice the bank? We think not. The principal object of the statute quoted creates a limitation upon the power of a commissioner to make a loan, for it directs that "no loan shall be made under this section unless * * *." Are lienholders, other than he who holds a first lien, to be disregarded and automatically deprived of their rights and property just because a

586

commissioner is not concerned with their rights, further than to procure their satisfaction so that the government may have the first and best lien? If that be true, then a commissioner may automatically disobey the statute, prefer creditors, and automatically do a wrong to him who would do the debtor and the commission's agency a favor. Surely such a course would deprive a nonconsenting lienholder of his property rights without due process of law.

It is urged that, because William A. Ashbrook was the president of both the building and loan association and the bank, what he knew and did as the officer of one corporation was the act of the other as well. The fallacy in this reasoning deserves little or no comment further than to say that the commissioner knew or should have known the liens were owned by different corporations, and that the plan of refinancing had been arranged with but one. Mr. Ashbrook's testimony stands unchallenged that he did not actively manage or know just what the building and loan association had done, and that he acted for the bank only.

Even if Mr. Ashbrook did release or attempt to release the two judgment liens it is doubtful if he accomplished that result insofar as such a release pertained to the judgment debtors. We make this comment in view of the rule found in State ex Squire, Supt. v Frasier, 133 Oh St 283, 13 N. E. (2d), 248, and the fact that the record in this case does not disclose the existence of any such conditions as are enumerated in the Frasier case, supra. Concededly, there was no payment. Nothing more happened by the giving and acceptance of new paper than a renewal of the acknowledged sum due the bank. The bank's acceptance of the new paper cannot be held to be a ratification of the president's act further than it aid thereby approve of the renewal of the obligation.

The authorities relied upon are not in point. The judgment of the trial court must be and is affirmed.

Judgment affirmed.

LEMERT & MONTGOMERY, JJ., concur.