JAMES W. MURPHY, TRUSTEE, APPELLANT, v. OMAHA LOAN & BUILDING ASSOCIATION, APPELLEE.

3 N. W. (2d) 403

FILED APRIL 10, 1942. No. 31308.

*S. L. Winters,* for appellant.

*Morsman & Maxwell,* contra.

*Kennedy, Holland, DeLacy & Svoboda,* amici curiæ.

Heard before SIMMONS, C. J., ROSE, EBERLY, CARTER, MESSMORE and YEAGER, JJ.

SIMMONS, C. J.

Plaintiff sues to cancel some 18 notes and the mortgages securing them, given to the defendant by 18 several mortgagors, and for an accounting and to recover amounts paid thereon. The trial court dismissed the plaintiff's petition. Plaintiff appeals.

Plaintiff sues as assignee of the claims of the several mortgagors. He alleges in effect that each of the 18 mortgagors were indebted to the defendant on notes secured by mortgages; that they were delinquent in their payments and facing foreclosure; that the mortgagors applied to the Home Owners Loan Corporation (hereinafter called the corporation) to refinance their loans; that the defendant agreed with the corporation to accept certain amounts in full payment of their indebtedness; that defendant, "in violation of its agreement * * * and without the knowledge and consent" of the corporation, required the mortgagors, and they "reluctantly agreed," to execute to defendant notes and mortgages for additional amounts to those which defendant had agreed to accept from the corporation, before defendant would complete the transaction; and that the corporation in reliance upon the defendant's promise to accept the lesser amount loaned to the mortgagors the amount fixed in the agreements.

Defendant by answer admitted the original indebtedness of the mortgagors to it, the application to the corporation for new loans, and the second mortgages given to it; and alleged that they were freely executed and taken by the defendant with full knowledge of the corporation. Defend-

ant further as to each mortgage set out the payments that had been made to it and pleaded the statute of limitations.

There were three parties to the transactions resulting in the refinancing of each of these loans—the mortgagors, the defendant, and the corporation.

The procedure followed in these cases was generally as follows: When a home owner desired to refinance his loan with the corporation, he consulted with the defendant and the defendant determined whether or not it would accept bonds of the corporation in payment of the amount owing to it. If so, it advised the corporation of that fact on a form furnished by the corporation entitled "Mortgagee's Consent to Take Bonds." So far as these 18 loans are concerned, such a consent agreement was signed in every instance and taken by the borrower to the corporation or sent to the corporation. The corporation then determined its course. In the 18 cases here involved the corporation was obviously unwilling to make full refunding in its bonds. The evidence is that it advised the defendant of what it would do and consultation was had. The defendant then determined what it would do. The corporation determined the conditions and the amount of the loan it would make. Where the conclusion was reached by the defendant that it would take payment of a part of its debt in the corporation's bonds and some or all of the remainder in a note secured by a second mortgage, the borrower was advised of that fact and the second mortgage was made, executed and delivered to the defendant by the borrower, *and the corporation was advised of that fact.* In 15 of the 18 cases here involved there is indorsed on the "Mortgagee's Consent to Take Bonds" (which had been given to the corporation prior thereto and was in its possession) an agreement of the defendant to accept corporation bonds for a stated part of the debt owing it "and second mortgage" for a stated amount.

In 17 of the 18 cases here involved (including the three not covered by indorsements on the "Mortgagee's Consent") the defendant by separate letters wrote the corporation, referring to its offer to advance a stated amount in

bonds, and advised the corporation that the borrower had given it a second mortgage, stating the amount thereof, the monthly payments, the interest rate; that the defendant's mortgage recited that it was subject to a mortgage to the corporation and would not be filed for record until after the corporation's mortgage was recorded. In some of these letters the defendant demonstrated the amount of reduction that would be had by the borrower in his stated monthly payments. In the one instance where such a letter does not appear in the record the indorsement appears upon the "Mortgagee's Consent" whereby the defendant agrees to accept a stated amount in bonds and a stated amount by "second mortgage."

In every instance the mortgages by the borrowers (the plaintiff's assignors) to the corporation are dated *subsequent* to the letters and indorsements above referred to by which the corporation was notified that defendant had taken second mortgages for a determined amount in addition to the bonds it expected to receive from the corporation.

After the new mortgages to the corporation and the defendant had been made (and in 16 of the 18 cases after the mortgages to the corporation had been recorded) the defendant in each of the 18 cases executed a receipt to the corporation, on its form "of authorization for delivery of Home Owners Loan Corporation bonds in the amount of $———, accrued interest on bonds $——— and $——— in cash in full payment of amount due the undersigned as lien holder in the matter of the loan of ———, refunded by the above corporation." (In each instance the blanks were filled in for the particular loan.) The plaintiff offered these receipts in evidence. The defendant objected that they were immaterial. The trial court sustained the objection. Plaintiff assigns that as error. In order that we may have the entire factual condition before us, we will consider that the receipts are in evidence for whatever value they may have in reaching a conclusion in the situation presented by this record.

Certain other facts should be mentioned. Early in the

history of the corporation and before any of these 18 cases had gone beyond the initial stages, the defendant by letter inquired of the corporation as to the taking of second mortgages and was advised, through channels, by the corporation's general counsel, that the corporation had "no means of preventing" it; that if the corporation could not advance the full amount of the indebtedness the "mortgagee may take a second" for the excess, the corporation's managers having been instructed, however, "not to negotiate such loans unless the second mortgage * * * is so arranged * * * that the home owner may reasonably be expected" to meet his obligations. The plaintiff introduced rules, regulations and instructions which he claims superseded this letter, about which more will be said later.

While all of them did not testify, it is a fair conclusion that the borrowers (plaintiff's assignors) were all in financial difficulty; that they might not have known of the indorsements on the "Mortgagee's Consent" agreements nor of the receipts by which the defendant received the corporation bonds. It, however, is clearly established that they all knew they were refinancing their delinquent indebtedness on their homes; that the corporation had a first mortgage, the amount thereof, and that the proceeds (after agreed deductions) were to be paid to the defendant; that the defendant had a second mortgage, the amount thereof, and that they were obligated on both mortgages which they had executed in payment of the prior indebtedness to the defendant.

These transactions were all handled in the Omaha office of the corporation. It is clear that the corporation, so far as its officers in its Omaha office are concerned, before the mortgages to it were executed, had full knowledge of the fact that defendant had taken these second mortgages, that they cooperated with the defendant in working out the problem of the delinquent mortgagors (plaintiff's assignors) and accepted their mortgages and paid out their bonds and cash and closed the transaction with full knowledge of the fact that the borrowers had executed and delivered these new

obligations and securities to the defendant. In three of these cases after the transactions were closed the corporation asked the defendant to waive its priority rights under its second mortgage in order that advances might be made for the reconditioning of the property.

A considerable part of the evidence in this record came from the files of the corporation and was produced by the officer in charge. He testified that "tons" of their records had been destroyed and that there was nothing in the file which he had in court showing that the corporation consented to the second mortgage. The record establishes that there was no fraud, no duress, no overreaching, no secrecy, no collusion, no withholding of information, and no misleading information. It shows a full disclosure of facts, the open fair dealing of all parties at arms' length and in good faith. There is no merit in plaintiff's contention that defendant violated its agreement with the corporation, nor did it act without the knowledge and consent of the corporation. On the contrary, it kept its agreements and made full disclosures to the corporation and acted in good faith.

In *Tarascio v. Mancuso, ante*, p. 225, 3 N. W. (2d) 400, released herewith, we cited with approval Restatement, Contracts, sec. 421, that "A payment or other performance by a third person, accepted by a creditor as full or partial satisfaction of his claim, discharges the debtor's duty in accordance with the terms on which the third person offered it." We rest this decision on this sound principle of contract law, which is not only an authority in its own right, but has had the approval of other recognized authorities. 6 Williston, Contracts (Rev. ed.) 5224. See *Grouf v. State Nat. Bank of St. Louis*, 76 Fed. (2d) 726, where the rule was applied to a payment made "in part satisfaction." See, also, *MacDonald v. Williams*, 121 W. Va. 580, 5 S. E. (2d) 528. Applying that rule to the instant case, the defendant (creditor) accepted the corporation's bonds in partial satisfaction of its claims, and in accordance with the terms on which the third person offered them. The original debt of the borrowers (plaintiff's assignors) was discharged to that extent but not beyond that limitation.

Other jurisdictions have decided similar situations upon the basis of public policy. In doing so they have arrived at the same conclusion that we do on the basis of principles of contract law. See *Bay City Bank v. White*, 283 Mich. 267, 277 N. W. 888; *Ridge Investment Corporation v. Nicolosi*, 15 N. J. Misc. 569, 193 Atl. 710; *Ganchoff v. Bullock*, 234 Wis. 613, 291 N. W. 837; *Dayton Mtg. & Investment Co. v. Theis*, 62 Ohio App. 169, 23 N. E. (2d) 511; *Shiver v. Liberty Building-Loan Ass'n*, 16 Cal. (2d) 296, 106 Pac. (2d) 4; *Lavery v. Rizza*, 126 Conn. 132, 9 Atl. (2d) 819.

A number of appellate courts have held that "secret" second mortgages given in refinancing arrangements with the Home Owners Loan Corporation are void and unenforceable. Many of these are collected in *McAllister v. Drapeau*, 14 Cal. (2d) 102, 92 Pac. (2d) 911. However, that court cited *Bay City Bank v. White, supra,* and *Ridge Investment Corporation v. Nicolosi, supra,* "that second liens taken by the creditor with the full knowledge of the H.O.L.C. are valid," and that the two classes of cases are "not in conflict." The superior court of Pennsylvania in *Anderson v. Horst*, 132 Pa. Super. 140, 200 Atl. 721, took the same position, as did the supreme court of New Jersey (by quotation) in *Markowitz v. Berg*, 125 N. J. Eq. 56, 4 Atl. (2d) 410. See, also, *Keystone Bank v. Booth*, 334 Pa. St. 545, 6 Atl. (2d) 417. The supreme court of Michigan recognized the distinction in *Meek v. Wilson*, 283 Mich. 679, 278 N. W. 731, and *Geel v. Valiquett*, 292 Mich. 1, 289 N. W. 306. Likewise, Connecticut in *Lavery v. Rizza, supra,* and Wisconsin in *Ganchoff v. Bullock, supra.* See *Dayton Mtg. & Investment Co. v. Theis, supra; Schram v. Welton*, 35 Fed. Supp. 889; *Johnstown Bank v. Runnels*, 65 Ohio App. 504, 30 N. E. (2d) 709; *Local Federal Savings & Loan Ass'n v. Harris*, 188 Okla. 214, 107 Pac. (2d) 1012. Other elements, not involved here, enter into some of the decisions, but where the question is presented which we are here considering the courts have preponderately held that, where there has been a full disclosure to the Home Owners Loan Corporation of the taking of the evidences of debt and the second mortgages

to secure them, and the Home Owners Loan Corporation has, with knowledge of that fact, consummated its new loan, the new evidence of debt and security to the original mortgagee are valid and enforceable.

There remain two matters for determination. The receipt form used here is substantially the same as that used in *Tarascio v. Mancuso, supra,* wherein we held that the legal effect of the receipt, under the facts of that case, was the payment of the debt evidenced by the second mortgage. In the *Tarascio* case the defendant had agreed with the corporation to accept part payment of his debt as payment in full; he made no reservations of the right to take a note and "second mortgage" for the balance of his debt; he made no disclosure to the Home Owners Loan Corporation of the fact that he had taken and held the second mortgage; he accepted the bonds of a third party as payment in full of his obligation and we enforced the legal effect of his act.

Here, as in the *Tarascio* case, the receipts must be construed in the light of what preceded their issuance. Here, there was an agreement to accept bonds plus a note secured by a second mortgage in payment of the existing debt; here the mortgagor knew that he was to have two smaller obligations where before he had had one larger obligation; here, the third party, advancing its bonds to refund the debt, knew that the second mortgage had been given and paid out its bonds with full knowledge of that fact. The defendant clearly signed the receipt as payment in full of that part of its claims for which it had agreed to accept bonds, to wit, that part not represented by the new note and second mortgage. The whole transaction leading up to the issuance of the receipts for the bond orders in these cases requires that the receipts for the bonds be construed as being payment in full of all that part of the debt referred to therein not represented by the new obligation and second mortgage securing it. The new obligations and second mortgages securing them remain valid subsisting obligations so far as these receipts are concerned.

There were introduced in evidence, over objection, many

of the instructions, rules, and regulations of the corporation. Most, if not all, of them will be found set out several times in the cases cited herein. There is disagreement as to what these various documents mean, upon whom and when they were applicable. Plaintiff contends that they should be construed that the consent of the corporation to the giving of the second mortgage was necessary; that only the state manager could consent for the corporation; and that without the consent of the state manager the mortgages are null and void. For instance, plaintiff quotes one rule that "In the closing of loans the final approval must be made personally by the state manager." From that and other provisions he argues that knowledge of the second mortgages had by the officers of the corporation who handled the loan, negotiated its terms, prepared the papers and paid out the corporation's bonds and funds was not sufficient to give validity to the second mortgages, and that validity depended upon the approval of the state manager. Other courts, whose decisions we have examined, have not so construed the rules and regulations, nor applied the rule for which plaintiff contends. We shall not attempt to chart a path through these various documents to determine that question.

There is no proof that the state manager did not give his consent to these second mortgages. The evidence is that there was nothing in the file which the witness had in court to show that he consented. This, fairly interpreted, means that the witness found no written instrument in the files which he construed to state that fact. This does not establish a lack of consent of the state manager (assuming but not deciding that officer's consent to be necessary). There is no showing that the testimony of the *then* state manager could not be secured. This record does not contain the settlement sheets or other evidence upon which the state manager acted. In the absence of evidence to the contrary, we assume that the responsible officials of the corporation performed their duties properly and as required by law. Assuming again, as plaintiff contends, that personal approval of the

state manager was necessary before the loans could be closed, then that personal approval is established by the evidence that the loans were closed. Certainly in approving the loan the state manager, in order that he act intelligently, had to have knowledge of the preliminary proceedings in the negotiating of the loan, including the showing, contained in the record *in every instance,* that the defendant had taken a second mortgage for a part of its claim. Under these circumstances, approval of the corporation's loan carries with it consent to and approval of the second mortgage.

The public policy argument is that it was the primary purpose of the congress in creating the corporation to save homes to home owners. With that statement all of the decisions agree. However, the congress likewise recognized the rights of the creditor, as did the corporation. He could not be compelled to accept less than his debt, nor to accept the corporation's bonds unless he elected to do so. That was a public policy in accord with sound contract law and constitutional principles.

In these instances the debtors, the creditor and the corporation, working together, solved the problem of the debtors. The contracts by which that was done are valid.

The judgment of the district court is

AFFIRMED.