MART FENDER, APPELLANT, V. C. F. MCCAIN, APPELLEE.

12 N. W. 2d 541

FILED DECEMBER 21, 1943. No. 31583.

*C. J. Campbell* and *J. Jay Marx*, for appellant.

*Mockett & Finkelstein, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

MESSMORE, J.

The plaintiff brought this action to recover on a promissory note, executed April 27, 1937, in the amount of $86, due one year after date, with interest. The history of this note, briefly summarized, is as follows:

Sarah M. McCain and her husband, C. F. McCain, defendant, were indebted to the First Trust Company of Lincoln, as successor-trustee for certain bondholders, including the plaintiff who was interested to the extent of $1,000. The total amount of indebtedness of the McCains was in the sum of $13,415.01, secured by a mortgage on real estate belonging to Sarah M. McCain, wife of the defendant. On or about the 27th day of January, 1934, this mortgage indebtedness was refunded by a new loan, made by the Home Owners Loan Corporation in the sum of $13,515. There remained the sum of $952.08, which constituted accrued and unpaid interest on the indebtedness, and on January 27, 1934, the defendant executed a note in the amount of $952.08, due and payable in two years. Subsequently, in lieu of the previous note and after it became due in 1936, the defendant executed and delivered to each bondholder, as a renewal, his note for his or her proportionate share of the larger amount, with accrued interest, and the note for $952.08 was canceled. The renewal note to the plaintiff, the bondholder in this action, was due in April. The defendant was unable to pay it; thereafter, on the date noted, the present renewal note was executed.

The defendant's answer denied liability on the note sued on, for the reason that the original note and mortgage of the McCains went out of existence at the time of the final settlement entered into on January 27, 1934; alleged that the bondholders agreed to take the H. O. L. C. bonds in full settlement of the original note and mortgage, so that when

the settlement was made and the bondholders took the $952.08 note from this defendant, which was unsecured, for accrued interest, there was no consideration; that the H. O. L. C. required an agreement from the bondholders before the note was taken that they would accept the bonds in full settlement, and after the transaction was closed the H. O. L. C. required a further receipt from the bondholders that they had taken the bonds in full settlement; that the taking of the original $952.08 note was a fraud on the H. O. L. C. and that such corporation was not apprised of the matter; that the rule of the H. O. L. C. in all refunding matters is that the application for a loan and all supporting documents be sent to Washington, D. C., together with a copy of the contract and proposed contract, approved by the H. O. L. C. board of directors, which was not done. The settlement sheet disclosed that the property was appraised for $17,092. The H. O. L. C. would accept no agreement with the debtors, concluding an agreement with the successor-trustee for the balance between the $83 and par value of the bonds. The bonds subsequently paid out in full at the par value of $100 each.

The trial court found for the defendants. We are not concerned with the finding with reference to public policy and need not determine the validity of such finding in the present opinion. We are concerned with the finding that defendant C. F. McCain gave the note and for the purpose as heretofore set out, and that the note in question was a secret transaction with the bondholders, unauthorized and illegal and not collectible. We therefore determine the question on the basis of the applicability of contract law, in accordance with *Murphy v. Omaha Loan & Bldg. Assn.,* 141 Neb. 230, 3 N. W. 2d 403, and other cases cited in the opinion. The plaintiff appeals, assigning as error that the judgment is contrary to the evidence and the law. The H. O. L. C. will hereinafter be referred to as the corporation and the First Trust Company of Lincoln as the successor-trustee.

The record contains exhibits setting forth the transaction

which will be briefly set out chronologically, in accordance with their importance and as we deem necessary.

On August 22, 1933, the assistant trust officer, by letter to the defendant, informed him that the bondholders refused to accept the corporation's bonds; called his attention to certain taxes and dates due, and the waiving of certain interest.

On November 7, 1933, at a meeting of the bondholders, it was stated that the loan had been approved for $12,072, and that the defendant had agreed to make up the difference of principal and past-due interest and interest to accrue to date of delivery of the bonds, to save the bondholders harmless for two years from date of delivery as against the market value and par value, should the bonds not pay 100 cents on the dollar. It was understood that the second mortgage, to cover interest and the difference in principal and possible loss on the sale of bonds, could not be considered of any value at the time, but the bondholders thought that a second mortgage, secured by the property, subject to a lien of $12,-000 to the corporation, might have some advantages.

Exhibit 12 is a letter, dated November 14, 1933, from the branch manager to the defendant, with reference to an application for a loan of $12,073, stating that, after rechecking and personal investigation, a loan for $13,000 would be recommended, and calling attention to a bulletin received from the department at Washington, to the effect that an agreement by the defendant with the mortgagee to make up any loss that might be incurred through a sale of the bonds, owing to the selling price being less than par, would be ineligible; that "The Corporation requires, if it refunds, that the mortgagee accept the bonds outright at face value plus accumulated interest and absolutely release the mortgagor to that extent," and, if the loan could be refinanced on the basis of $13,000, without such an agreement to discount the bonds, then the loan would be recommended for headquarter's approval.

On November 16, 1933, the defendant wrote one Ihringer, a bondholder, calling attention to a conference held with the

branch manager of the corporation at the time defendant was requesting revaluation of the property; that he, defendant, was asked outright if any agreement had been requested of him to make up the difference between the market value and the par value of the bonds, and the defendant stated he "could only answer him truthfully. It was then that he agreed to raise the valuation to an extent where the full amount of the loan could be refunded by the issue of the Loan bonds. The balance of the proposed loan would have to be used for payment of taxes." In this letter the defendant said: "I regret exceedingly that this ruling of the Home Owners' Loan Corporation necessitates a reconsideration of the matter, but you will recognize that their ruling must be observed. It is permitted that I make arrangements with your Trustee for the payment of the past due interest and this I stand ready to do."

Exhibit 10 is a notation of the meeting of the bondholders, dated November 22, 1933, wherein a motion was made that the First Trust Company act as trustee, "under a note which Mr. McCain agrees to give to cover all interest due the bondholders to date, we to make collection for a period of two years and pay same to the bondholders."

The "Mortgagee's Consent to Take Bonds," dated December 4, 1933, reads in part: "the undersigned (successor-trustee) has considered the method of refunding mortgages provided in Home Owners' Loan Act of 1933, as passed by Congress and approved by the President, and the undersigned hereby consents, if said refunding can be consummated, to accept in full settlement of the claim of the undersigned the sum of $12,500—12/20-33;" signed by the assistant trust officer.

Exhibit 8 is a receipt, dated February 9, 1934, acknowledging receipt of $12,560.96 in bonds, and $1.54 in cash, in full payment of the amount due the successor-trustee as lienholder in the loan of Sarah M. McCain and the defendant, refunded by the corporation.

On April 18, 1936, the assistant trust officer of the successor-trustee wrote to Mr. Ihringer, enclosing the original

note of January 27, 1934, for $952.08, signed by the defendant, which became due January 27, 1936, stating that the note had been canceled for the reason that individual notes, representing the *pro rata* share of such note, had been signed by the defendant and delivered to the individuals, original bondholders.

On April 11, 1936, the bondholders released the successor-trustee from any further responsibility for the collection of the original note.

It was stipulated that the original note was given for accrued interest on the original mortgage transaction. Throughout the record there appears nothing, other than the statement of the defendant, contained in his letter of November 16, 1933, to Ihringer, who was charged with the collection of the individual notes, to show that the corporation had knowledge of any kind with reference to the original note as being part of the transaction involving the refunding, which was accepted by the successor-trustee for the benefit of the bondholders.

The plaintiff's contention is that the defendant represented to him and the other bondholders and the trustee that the giving of his note for the accrued interest was approved by the corporation and that the corporation had permitted it; directing our attention to the case of *Murphy v. Omaha Loan & Bldg. Assn., supra,* and its similarity to the instant case. In the *Murphy* case a second mortgage was involved, and there had been a full disclosure made to the H. O. L. C. of the taking of the evidence of debt and the second mortgages to secure the debt, and the H. O. L. C., with full knowledge of the fact, consummated its new loan. The new evidence of debt and the original mortgage were held valid and enforceable. Likewise our attention is directed to *Krause v. Swanson,* 141 Neb. 256, 3 N. W. 2d 407, as being similar, in that the note sued on in the *Krause* case was executed after the refunding transaction. The plaintiff, Donald Krause, urged defendant Lenore B. Swanson to execute the consent to take the H. O. L. C. bonds. Defendants testified, in substance, that the plaintiffs at that time were

to pay the difference between the value of the bonds and the balance due on the land contract in cash, and no second mortgage was contemplated. Donald Krause testified that he was to pay in cash, if he could, and, if he could not, then pay a portion in cash and give a second mortgage for the balance. This court held:

" 'A payment or other performance by a third person, accepted by a creditor as full or partial satisfaction of his claim, discharges the debtor's duty in accordance with the terms on which the third person offered it.' Restatement, Contracts, sec. 421." The court said that, under the evidence, the debt was legally extinguished. The case turned on the principle, as the court held:

"Where a person honestly owes a debt, and ought, in equity and good conscience, to pay it, there is a sufficient consideration for the execution of a note and mortgage given for payment of the debt." That is, a moral obligation was existent, and, therefore, the foregoing rule was applied.

*Krause v. Swanson, supra,* cited as authority *Fourth Nat. Bank of Cadiz v. Craig,* 1 Neb. (Unof.) 849, 96 N. W. 185, wherein it was said: "The principle is well settled that a moral obligation to pay a pre-existing legal debt is a good consideration for the execution of a note and mortgage in its payment." The rule was applied by upholding the note by a promise to repay the surety the amount he had paid on the principal obligation, even on the assumption that the surety might, for some ulterior reason, have lost his right of action.

In the *Craig* case, John Craig on August 7, 1893, executed to the First National Bank of Cadiz, Ohio, a note for $3,744, and to secure the same he and his wife executed a mortgage on certain lands in this state. John Craig sent the note to his father, Walter Craig, who resided in Cadiz, the father endorsed his name on the back of the note and delivered it to the bank, and appellant John Craig received the money. After maturity, the appellants failed to pay the note. Suit was brought against the father, as surety, in Ohio, resulting in a judgment against him for the amount due on the note.

The father made payments on the judgment from time to time. Finally, an execution was issued on the judgment, and on September 3, 1895, the sum remaining due was paid from the proceeds of the sale of the father's property. On June 3, 1895, the father was indebted to the bank on the obligation in the amount of several thousand dollars, and he executed an assignment of his claim against the son, John Craig, arising by reason of the repayment of the note described, and authorized the bank to proceed to collect the amount due from John and the other appellants. The bank presented the claim, demanded that John and the other appellants satisfy it, and John Craig executed the note and mortgage in suit. The answer alleged fraud. A decree was entered, foreclosing the mortgage. There was no evidence of fraud in the record. Judgment was taken against Walter Craig on the note nearly a year before the assignment. He had made payments on it. The transfer was completed by an actual transfer of the note 30 days before the execution of the mortgage in suit. The proceedings operated to transfer to the bank the right which the father undoubtedly had to collect the amount he had paid from his son John. This was a sufficient legal consideration for the note and mortgage in suit. Back of this is the fact that the father's surety had paid the debt of the son John and was entitled to repayment of the amount. Therefore, there was a moral obligation to pay a preexisting and legal obligation which constituted sufficient consideration for a note given in its payment. There is a difference between an existing legal obligation and no obligation at all.

We have detailed the facts in *Fourth Nat. Bank of Cadiz v. Craig, supra,* to disclose its inapplicability to the situation as presented in *Krause v. Swanson, supra.* We deem it inadvisable to distinguish the Wisconsin cases, cited in the *Krause* case, as the factual situation is not analogous to either the instant case or *Krause v. Swanson.*

We take cognizance of the case of *McMillan v. Palmer,* 198 Ark. 805, 131 S. W. 2d 943, wherein the court sustained the proposition of a moral consideration, tantamount in

character to that which was pronounced in *Krause v. Swanson, supra.* The *McMillan* case is the minority view, and we conclude its reasoning is contrary to the best accepted reasoning by a majority of the courts on the subject, and consequently do not follow the *McMillan* case. The majority rule is reflected by the following statement in the Annotation, 17 A. L. R. 1335:

"While, as has been seen, the cases are nearly unanimous in upholding the validity of a new promise without a new consideration, after a discharge by operation of law in bankruptcy or insolvency proceedings, they, with a few exceptions (which will be subsequently noted), unite in holding that a new promise, after a voluntary discharge by act of the parties, is invalid without a new consideration, even when the debt, or a portion of it, is unpaid."

The following cases pronounce in principle the proper rule: A debt is voluntarily discharged by a composition among creditors, and it is wholly gone and leaves no obligation to pay, either legal or moral, which will support a new promise. *Martin Lewis & Co. v. Simons,* 1 Handy (Ohio) 83. A new promise, after a voluntary release by the act of the parties, is not founded on a sufficient consideration. *T. P. Shepard & Co. v. Rhodes,* 7 R. I. 470, 84 Am. Dec. 573. A debt released upon an accord and satisfaction by a composition assented to by all the creditors is extinguished, and cannot form the consideration of a new promise. *Evans, Fite, Porter & Co. v. Bell,* 15 Lea (Tenn.) 569. Where a debtor has entered into a deed of composition with his creditors by which they release him from his debts, a promissory note subsequently given to a creditor for the remainder of the debt is a *nudum pactum. Ex parte Hall,* 1 Deacon, Bankr. (Eng.) 171.

The foregoing cases held in principle: It is well settled that a mere moral obligation does not constitute a valid consideration for a promise, and the cases which seem to be exceptions to this rule are cases in which the provisions of some positive law had interposed to prevent the enforcement of a just and legal claim.

In the instant case, when the McCains were in default of their mortgage, the bondholders had a remedy to which they could resort. They chose to have the successor-trustee settle the debt in its entirety. This was done. Under the circumstances, there was nothing left upon which to base a moral consideration. The interest on the indebtedness went out when the refinancing was completed on account of the settlement.

A moral obligation, as heretofore shown by the Annotation, *supra*, cannot have consideration founded on that which is not in existence. We refer to the rule in *Tarascio v. Mancuso*, 141 Neb. 225, 3 N. W. 2d 400, which has heretofore been stated in *Krause v. Swanson, supra*, which is applicable to the facts in the instant case, and which has been adhered to in *Murphy v. Omaha Loan & Bldg. Assn., supra*.

The case of *Krause v. Swanson*, 141 Neb. 256, 3 N. W. 2d 407, in so far as it conflicts with the instant case as to the applicability of a moral consideration being present in a state of facts as here existing, is overruled and vacated.

AFFIRMED.

YEAGER, J., dissents.