LUVERDA M. GORDON, APPELLEE, V. CLAUDE E. YOUNG,
AGNES M. YOUNG ET AL., APPELLANTS.

20 N. W. 2d 616

FILED NOVEMBER 16, 1945. No. 31940.

*Monsky, Grodinsky, Marer & Cohen,* for appellants.

*Fromkin, Houston & Sutton,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

MESSMORE, J.

This is an action in equity to foreclose a second mortgage upon real estate.

The plaintiff's petition alleges in substance that she is the widow of Henry Osborne, deceased, who died September 7, 1937, and by virtue of his last will and the proceedings in probate thereof, she became the owner and holder of a second mortgage made and executed by the defendants, John Stickley and his wife Jerene Stickley, to Henry Osborne August 30, 1934, in the amount of $431, with interest at 5 percent per annum; that on or about July 3, 1937, Stickleys sold their interest in the mortgaged premises to the defend-

ants Claude and Agnes Young, husband and wife, who are in possession. Plaintiff prays for foreclosure in the usual form.

The defendant, Metropolitan Utilities District, was dismissed from the case. The defendants Stickley made no appearance and filed no pleadings and default was entered against them. The defendants Young filed an answer containing a general denial and set forth the facts upon which they seek to have the second mortgage declared null and void. The reply is a general denial.

The court rendered judgment for the plaintiff, finding that there was due and owing the amount of $570.22, that the mortgage was a lien superior to all right, title, and interest that the defendants might have in the real estate, and ordered the property sold to pay the mortgage indebtedness. The defendants Young filed a motion for new trial which was overruled, and from this order they appeal.

The record discloses that on March 17, 1931, Lloyd Osborne who was engaged in the real-estate business in Omaha, Nebraska, and his wife Mabel, contracted to and did sell to John and Jerene Stickley, husband and wife, the real estate described in the pleadings, the consideration being $3,000, with a down payment of $332.34, the balance of $2,667.66 payable in installments of $40 per month. Payments were made on this contract until about April 1934, when the unpaid balance amounted to $1,960.65, with interest in the amount of $10.34, making a total of $1,970.99. In 1933, by act of Congress, the Home Owner's Loan Corporation, hereinafter referred to as the corporation, was created, and for the purpose of making loans under the act, adopted certain rules and regulations. The Stickleys were in arrears in payments and in default of their contract. To avoid foreclosure Lloyd Osborne suggested that the Stickleys apply to the corporation for a loan. To make a loan, the corporation required the mortgagee to consent to take its bonds. On May 2, 1934, Lloyd Osborne consented to take the corporation bonds in the amount of $1,506 in full settlement of the mortgagee's claim for $1,970.99. On July 30,

1934, Mabel Osborne assigned all her interest in the corporation's bonds to Lloyd Osborne. On August 15, 1934, Lloyd Osborne signed an authorization for the delivery of the corporation bonds. The corporation completed its transaction on August 15, 1934, and its mortgage was recorded August 27, 1934, and on August 30, 1934, Lloyd and Mabel Osborne delivered the warranty deed to the Stickleys. This deed was recorded September 5, 1934. Simultaneously with the delivery of the deed there was delivered to Lloyd Osborne $1,500 of the corporation's bonds, together with accrued interest of $1.57 and cash in the amount of $4.43, making a total of $1,506 for which Lloyd Osborne receipted September 5, 1934, in full payment of the amount due him from the Stickleys. On August 30, 1934, Lloyd Osborne and his uncle, Henry Osborne, procured a second mortgage in the amount of $431 from the Stickleys. Lloyd Osborne testified that the house needed repairs and Stickleys needed money to buy millwork, window casings, and to repair the furnace, and that in addition, Stickley owed him the balance over and above the amount the corporation had settled with him for, which amounted to between three and four hundred dollars; that his uncle gave him between three and four hundred dollars and the balance went to Stickley. This resulted in the mortgage in controversy made to Henry Osborne, the uncle, which was recorded October 15, 1934. That repairs were placed on the house or the furnace repaired is controverted by the testimony of Claude Young who testified that the house was in a bad state of repairs.

Legal bulletins, constituting a part of the rules and regulations in force and effect with the corporation and which had to do with the giving and taking of second mortgages to take up the difference between the amount which the mortgagee agreed to accept from the corporation and the amount he claimed under the mortgage or loan, are in evidence and disclose that the corporation deals with any loss that may have been suffered by the mortgagee in taking the bonds of the corporation.

On July 3, 1937, the Stickleys deeded the property to the

defendants Young. This deed recited that the property was "subject to balance due on mortgages of record" and was recorded October 30, 1937.

We adduce from the evidence that Henry Osborne and his nephew, Lloyd Osborne, knew the manner in which the corporation was then making loans; that there must be a consent to take the bonds of the corporation upon an agreed amount in full payment of the debt; that it would be a matter for the mortgagee to either accept or reject the bonds in payment of the debt; and likewise it was known to both that a receipt for the bonds in full payment of the debt would be required. It was clear to Henry Osborne that if the full debt had been paid there would have been an amount in excess of the corporation bonds still owing to his nephew by the Stickleys. He knew the loss sustained by Lloyd Osborne and the exact amount thereof, $431, which is apparently correct from Lloyd Osborne's own figures.

This second mortgage was procured by Henry and Lloyd Osborne on August 30, 1934. Six days thereafter Lloyd Osborne, on September 5, 1934, receipted for the corporation bonds in full payment of the debt. The second mortgage was withheld of record until October 15, 1934. In this connection the testimony of Lloyd Osborne is that the corporation preferred not to have the second mortgage recorded until after its mortgage had been recorded. However, the record is void of competent evidence to show that the corporation had any knowledge of this second mortgage. In fact, it was a secret second mortgage, exacted as a condition of the acceptance of the corporation bonds by Lloyd Osborne. The corporation made its loan and delivered the bonds to Lloyd Osborne, with a complete understanding that it was in full payment of the debt owing by the Stickleys to him. Lloyd Osborne, in 1934, handled many loans with the corporation and was acquainted with the rules and regulations of the corporation in making its loans. He suggested to the Stickleys that they refinance the mortgage to him, so on April 28, 1934, John Stickley made application to the corporation for a loan, setting forth the history of his

indebtedness to Lloyd Osborne. The transaction proceeded, Lloyd Osborne took the corporation bonds in full and complete settlement of the Stickleys' mortgage debt, and the corporation did not consent to the second mortgage here in controversy. It is apparent that by the method and manner in which Henry and Lloyd Osborne procured the second mortgage, they sought to circumvent and evade the rules and regulations of the corporation in making its loans. From the evidence it is doubtful if Henry Osborne ever advanced Lloyd Osborne any money for the benefit of the Stickleys, or that they received any money from him to repair the house and furnace.

The appellants contend that under the circumstances the second mortgage is null and void and nonenforceable for all purposes.

In Tarascio v. Mancuso, 141 Neb. 225, 3 N. W. 2d 400, a case involving a second mortgage which the plaintiff sought to declare null and void when the mortgage debt was settled in full by acceptance of H. O. L. C. bonds and a second mortgage was taken by the original mortgagee over and above the H. O. L. C. bonds, this court determined the case on contract law, holding as follows: " 'A payment or other performance by a third person accepted by a creditor as full or partial satisfaction of his claim, discharges the debtor's duty in accordance with the terms on which the third person offered it.' Restatement, Contracts, sec. 421."

Applying the rule to the case at bar, the corporation, the third person, paid the creditor, Lloyd Osborne, an agreed amount of its bonds in full satisfaction of Lloyd Osborne's claim against the Stickleys. This discharged the debtors' duty in accordance with the terms on which the corporation offered the payment which was accepted by the creditor. Therefore, the debt of the Stickleys was terminated.

" 'Payment by a third person of a sum less than the amount due, with the understanding that it shall be in full satisfaction thereof, is a valid accord and satisfaction, and no action will lie against the debtor to recover the balance. In such case there is a new consideration from a new party,

and the general rule that the receipt of a smaller sum is not a good accord and satisfaction of a larger one, does not apply.' 1 C. J. 545." Tarascio v. Mancuso, *supra*. See, also, Murphy v. Omaha Loan and Bldg. Ass'n., 141 Neb. 230, 3 N. W. 2d 403; Fender v. McCain, 144 Neb. 58, 12 N. W. 2d 541.

The appellants further contend the grantee of mortgaged real estate is not estopped to question the validity of a mortgage, where the grantee is not bound to pay a mortgage which does not constitute a part of the consideration of the purchase price, and the mortgage is not definitely described in the conveyance. In this connection the record discloses that Claude Young was employed by a realty company, and John Stickley owed some payments to the company and was unable to meet them, so arrangements were made whereby Claude Young purchased the property from John Stickley for a nominal amount and assumed and agreed to pay the corporation's mortgage. After the deed had been delivered and the abstract was being examined, the examiner informed Claude Young of the second mortgage. Thereafter Claude Young contacted John Stickley and the corporation with reference to the validity of the mortgage, and was informed by them that the mortgage was invalid.

Lloyd Osborne testified that when Claude Young made the deal with John Stickley, he came to Osborne's office and wanted to know the balance due on the second mortgage, that he was trading with Stickley for the property. Lloyd Osborne informed Claude Young that there were payments due on the second mortgage, and Young told him that he hoped to be able to make payments, that he was contemplating going to Chicago where he could obtain a better salary, and the matter drifted on and no payments were made.

Claude Young testified that Lloyd Osborne informed him that he had the note and mortgage for collection and asked that it be paid, and Claude Young agreed to pay it if it was a legal mortgage, but he had been informed to the contrary; that no demand had ever been made on him by the appellee or by her husband prior to his death, or by the appellee's at-

torney, for payment of this mortgage; and that the mortgage constituted no part of the consideration in the purchase price, and when the agreement to purchase was made with Stickley, he had no knowledge of the mortgage.

In Robinson Bank v. Miller, 153 Ill. 244, 38 N. E. 1078, 46 Am. St. Rep. 883, 27 L. R. A. 449, it was held that the grantee of land who takes it subject to encumbrances is not bound to pay a mortgage thereon which did not constitute a part of the consideration of his purchase and which was not made in good faith for a real indebtedness.

"Where an incumbrance is not made a part of the consideration of an absolute conveyance, and is not deducted from it, and it is not assumed by the grantee, the recital in the deed that the conveyance is subject to an incumbrance does not estop the grantee from showing that the purported incumbrance is not one in fact because of its invalidity, * * * ." Brooks v. Owen, 112 Mo. 251, 20 S. W. 492.

A conveyance reciting that it is subject to all liens of mortgages does not constitute an admission that there are any such liens, and the recital does not estop the grantee from denying the validity of a lien upon the premises. See Sherman v. Goodwin, 12 Ariz. 42, 95 P. 121; Annotation to L. R. A. 1917C 832; 37 Am. Jur., Mortgages, s. 984, p. 318.

From an analysis of the evidence, it is apparent that when the appellants Young purchased the property from John Stickley, the mortgage in controversy constituted no part of the consideration for the purchase price. Under the circumstances the appellants are not estopped to raise the invalidity of the mortgage.

We conclude that the mortgage is null, void, and nonenforceable against the appellants.

For the reasons given in this opinion, the judgment of the district court is reversed and the appellee's cause of action dismissed.

REVERSED AND DISMISSED.