C. C. WATTERS, APPELLANT, V. ARLUSTER R. HARRIS ET AL., APPELLEES.

26 N. W. 2d 182

FILED FEBRUARY 14, 1947. No. 32162.

*Carl F. Benjamin,* for appellant.

*Donovan & Frohm,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

CARTER, J.

This is a proceeding to set aside a decree in a real-estate mortgage foreclosure on the grounds that the mortgage foreclosed was invalid from its inception and that the decree was procured by fraud. The trial court set aside the decree, held the note and mortgage to be null, void, and unenforcible, and dismissed the petition praying for the foreclosure of the mortgage. The plaintiff appeals.

The record in this case shows that on March 11, 1924, Shirley D. Lewis contracted to sell the property in question to Arluster R. Harris and Libbie F. Harris, his wife, for a consideration of $4,000, subject to a mortgage to the Nebraska Savings & Loan Association for $2,000. The plaintiff, C. C. Watters, subsequently became the owner of the title. The payments due under the contract of sale became delinquent in 1934 and the defendants Harris applied to the Home Owners' Loan Corporation for a loan. This application resulted in Watters deeding the property to the defendants, a mortgage to the Home Owners' Loan Corporation in the amount of $1,685, a consent by the Nebraska Savings & Loan Association to take bonds in the amount of $688.77, and a consent by Watters to take bonds in the amount of $719.50 as full settlement. The foregoing transaction appears to have been fully completed on August 10, 1934. On the same day the defendants executed a second mortgage to Watters in the amount of $427.

The record shows that defendants failed to make the payments due on the second mortgage, and on March 22, 1935,

a foreclosure suit was commenced. Summons was issued and served personally on Arluster Harris and on Libbie Harris by leaving a certified copy at their usual place of residence. Each admit receiving a copy of the summons and a knowledge of its contents. On July 13, 1935, plaintiff's husband notified defendant Arluster Harris by letter of his intention to take a decree on July 20, 1935. The decree was actually entered on July 22, 1935. On October 16, 1935, plaintiff's husband notified defendant that he would seek a confirmation of the sale of the property on October 19, 1935, or as soon thereafter as the court could hear it. On October 24, 1935, plaintiff's husband wrote defendant regarding the method of making the payments due on the Home Owners' Loan Corporation loan. On February 13, 1936, plaintiff's husband again wrote defendant in which he threatened to proceed with the foreclosure unless the payments due on the Home Owners' Loan Corporation mortgage were made. Defendant admits receiving these letters. The record indicates that the payments were made on the Home Owners' Loan Corporation mortgage until it was fully paid. Plaintiff permitted the sale to remain unconfirmed during the period defendants were paying off the first mortgage.

When the first mortgage was paid in full, defendants asserted that the decree of foreclosure was obtained by fraud in that plaintiff's husband had agreed with Arluster Harris after the service of summons to dismiss the foreclosure upon the payment of three dollars to cover the cost of the serving of the summons, that three dollars were paid and that defendants did not discover that the suit had not been dismissed until November 1944. It was also alleged that the note and mortgage in question were obtained by fraud in that plaintiff, after accepting $719.50 in bonds of the Home Owners' Loan Corporation in full settlement of the debt due, procured the mortgage in question by concealing from defendants the fact that the indebtedness represented

as the consideration therefor had been fully paid and discharged.

There was introduced into the record certain regulations of the Home Owners' Loan Corporation which were promulgated by its board of directors. Nothing therein contained prohibits the taking of a second mortgage by a creditor who has not been fully paid. The regulations do provide that the loan will not be consummated if the amount of his mortgage and the amount of the first mortgage taken by the Home Owners' Loan Corporation exceed the appraised value of the real estate as made by the Home Owners' Loan Corporation, and if the payments of principal on the second mortgage are adjusted in such a way as not to impair the ability of the owner to make the payments due on the first mortgage. It is true, as alleged, that plaintiff did agree in writing with the Home Owners' Loan Corporation to accept $719.50 in bonds as full settlement of plaintiff's claim against the property.

With reference to the first proposition raised, it will be noted that Arluster Harris contends that shortly after the summons was served on him in the foreclosure action he took the summons to the office of plaintiff's husband to inquire about the suit. He says that Watters informed him that if he would pay the cost of serving the summons he would forget about the foreclosure suit. Defendant testifies that he paid three dollars for this purpose, which Watters denies. In any event, defendants thereafter were repeatedly notified by Watters as to the various steps being taken in the litigation. For ten years after the taking of the decree, with full knowledge of the suit and the steps taken in the litigation, the defendants ignored the summons issued and the notices of judicial proceedings being taken. Such lethargy and indifference to one's rights cannot afford a basis to vacate the decree because of fraud. In the first place, there was no fraud practiced because defendants were informed of each contemplated step in the litigation, and even if fraud did exist in the taking of the decree, we

know of no statute or rule of equity which would afford defendants any relief under the circumstances here shown. In Brandeen v. Beale, 117 Neb. 291, 220 N. W. 298, this court in a similar case said: "In a proceeding brought under section 9160, Comp. St. 1922, (§ 25-2001, R. S. 1943) to modify or vacate a judgment on account of fraud, after two years from the rendition of the judgment, if the petition shows that the facts were discovered within the period of limitation and fails to show any good reason why the two years should be extended, it is not error for the court, on motion or demurrer, to strike the petition from the files." See, also, Lindstrom v. Nilsson, 133 Neb. 184, 274 N. W. 485; State, ex rel. Spillman v. Commercial State Bank, 143 Neb. 490, 10 N. W. 2d 268. In the present case the evidence shows that defendants had knowledge of the matters charged as fraud before the decree was entered. Under the authorities above cited the applicable statute of limitations is a bar to statutory relief and the laches of defendants is a bar to any equitable relief existing outside the scope of our statutory law. Shufeldt v. Gandy, 34 Neb. 32, 51 N. W. 302; Campbell v. Harvard State Bank, 103 Neb. 562, 173 N. W. 587.

The defendants contend that the second mortgage was obtained by fraud by concealing from defendants that the indebtedness represented as the consideration therefor had been fully paid and discharged. The evidence shows that the Home Owners' Loan Corporation appraised the property in question at $2,112; $427 more than the first mortgage, which is the exact amount of the second mortgage in suit. In other words, there was strict compliance with the regulations of the Home Owners' Loan Corporation that a loan would not be consummated where a second mortgage is taken in excess of the difference between the corporation's loan and the corporation's appraisal of the property. A representative of the Home Owners' Loan Corporation testified that no written consent of the corporation permitting plaintiff to take a second mortgage ap-

peared in the corporation files. Plaintiff's husband testified that he talked with representatives of the corporation many times concerning the second mortgage after it had been given. The conferences appear to have resulted from the failure of defendants to make their monthly payments regularly to the corporation. Any differences seem to have been adjusted by plaintiff waiving payments under the second mortgage in order that the ability of defendants to make their payments to the corporation would not be impaired. That the Home Owners' Loan Corporation, through its agents, knew of this second mortgage is established by the evidence of Arluster Harris who testified that he first heard of the second mortgage from a representative of that corporation.

It is the contention of the defendants that the acceptance of the bonds of the Home Owners' Loan Corporation by plaintiff, as a full satisfaction of her claim, discharged the duty of these defendants in accordance with the terms on which the Home Owners' Loan Corporation offered it. We think this statement is in line with the holdings of this court. See Fender v. McCain, 144 Neb. 58, 12 N. W. 2d 541; Gordon v. Young, 146 Neb. 578, 20 N. W. 2d 616. Consequently, no valid consideration existed for the giving of the second mortgage of $427. Fender v. McCain, *supra*.

But this defense is no longer available to the defendants. They had actual notice of the commencement of the foreclosure suit and of the steps taken in that action. They had full opportunity to assert this defense, but they elected to do nothing. A defendant may not ignore judicial proceedings commenced against him of which he has notice, and assert any defense thereto which was then available to him whenever it suits his convenience. No statutory ground exists for vacating the decree of foreclosure after the term at which it was made. See § 25-2001, R. S. 1943. The power of a court of equity to vacate a decree after the term at which it was entered, existing independent of statute, will be exercised only when circumstances calling for

equitable relief are shown to exist. No such situation is here shown. The defendants, with full knowledge of all the facts, negligently permitted a decree of foreclosure to be taken. For ten years thereafter they remained acquiescent. In Campbell v. Harvard State Bank, *supra,* we said: "It is a general rule that a court of equity will not set aside a judgment rendered in a case where the party complaining had full notice and knowledge of the pendency of the suit and took no steps to protect his interest at that time." Such negligence does not afford a basis for equitable relief. The decree, even if a defense thereto existed, was the result of the negligence and carelessness of the defendants themselves, and not the fraud of the plaintiff. Federal Land Bank v. Arthur, 124 Neb. 496, 247 N. W. 17.

We conclude that grounds do not exist which would warrant a court of equity to vacate the decree of foreclosure in the instant case. The judgment of the district court is reversed and the cause remanded with directions to dismiss defendants' petition to vacate the decree, and to proceed in the foreclosure action, as required by law.

REVERSED AND REMANDED.